**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| THE DUGABOY INVESTMENT TRUST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MARK E. PATRICK, individually and as trustee of DAAM REAL ESTATE TRUST, et al.,<br><br>Defendants,<br><br>ATLAS IDF, L.P.; et al.,<br><br>Nominal Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 4:26-CV-00738-RK |

**SUGGESTIONS IN SUPPORT OF DEFENDANTS'[1] MOTION TO DISMISS**

[1] This motion is brought on behalf of Mark Patrick, individually, Atlas IDF GP, LLC; Charitable DAF GP, LLC; CDH GP, Ltd.; CDMCFAD, LLC; CLO Holdco, LLC; CLO Holdco, Ltd.; DFW Charitable Foundation; Hunter Mountain Investment Trust; Rand Advisors, LLC; Rand PE Fund Management, LLC; Atlas IDF, LP (nominal); Beacon Mountain, LLC (nominal); Charitable DAF Fund, L.P. (nominal); and Rand PE Fund I, LP (nominal).

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ........ 1

**FACTUAL BACKGROUND** ........ 2

**I. The Parties** ........ 2

**II. The Two Transactions Underlying this Dispute** ........ 3

**III. Dondero Litigated and Continues to Litigate this Same Dispute in Various Other Forums** ........ 5

**ARGUMENT** ........ 9

**I. Dondero's Complaint Should Be Dismissed for Lack of Personal Jurisdiction.** ........ 9

A. Under RICO, this Court may exercise personal jurisdiction over Patrick only if a Missouri court would be able to ........ 9

B. Patrick is not subject to the general or specific jurisdiction of Missouri courts. ........ 11

C. Exercising personal jurisdiction over Patrick does not comport with the Due Process Clause because Patrick lacks minimum contacts with Missouri. ........ 14

**II. Dondero's Complaint Should Be Dismissed for Improper Venue, or Alternatively, This Action Should Be Transferred to the Northern District of Texas** ........ 16

A. Venue does not lie under RICO's venue provision, 18 U.S.C. § 1965(a). ........ 17

B. Venue does not lie under the general venue statute, 28 U.S.C. § 1391(b)(2), either. ........ 19

C. In the alternative, this action should be transferred under 28 U.S.C. § 1404(a). ........ 21

**III. Dondero's Complaint Should Be Dismissed for Failure to State a Claim.** ........ 23

A. Dondero fails to state plausible claims in Counts I (RICO) and II (conspiracy to violate RICO) because Dondero lacks RICO standing and does not allege a distinct RICO enterprise or a continuous pattern of racketeering. ........ 24

B. Dondero fails to state a plausible claim in Count III (common-law fraud) because the allegations lack particularity and do not allege actual reliance. ........ 34

C. Count IV (conversion) should be dismissed because Dondero does not allege ownership of any property subject to conversion and instead seeks recovery for injuries to contractual, governance, and other intangible rights. ........ 36

D. Dondero fails to state a plausible claim against Patrick in Count V (breach of fiduciary duty) because he does not allege facts to support the existence of a fiduciary relationship. ........ 37

E. Counts VI (breach of contract) and VII (breach of the implied covenant of good faith and fair dealing) should be dismissed because Dondero has not plausibly alleged any right to enforce the Hunter Mountain Trust Agreement. ........ 39

F. Count VIII (civil conspiracy) fails because the underlying claims upon which it is based fail and it is barred by the intracorporate immunity doctrine. .......................... 43

G. Dondero fails to state a claim in Count IX (unjust enrichment) because he specifies neither that he conferred a benefit nor what benefit was conferred........................... 44

H. Count X fails to state a plausible in rem claim, constructive trust, equitable lien, or tracing claim because these "claims" are not viable causes of action. ....................... 45

**CONCLUSION ........................................................................................................... 46**

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*504 Tavern LLC v. Vitti*,
2014 WL 3487488 (W.D. Mo. July 15, 2014) ........ 29
*Allied Servs., LLC v. Smash My Trash, LLC*,
153 F.4th 600 (8th Cir. 2025) ........ 44
*Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*,
949 F.3d 417, (8th Cir. 2020) ........ 35
*AML IP, LLC v. Bath & Body Works Direct, Inc.*,
189 F.4th 1132 (Fed. Cir. 2026) ........ 23
*Andes v. Albano*,
853 S.W.2d 936 (Mo. 1993) ........ 39
*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ........ 26, 27, 28
*Apollo Prods., Inc. v. Marino*,
2006 WL 1798250 (W.D. Mo. June 28, 2006) ........ 20, 21
*Ark. Home-Based Servs. Ass'n, Inc. v. Pinnacle In Home Care, LLC*,
2024 WL 4360497 (W.D. Ark. Sept. 30, 2024) ........ 27
*Armstrong v. Am. Pallet Leasing Inc.*,
678 F. Supp. 2d 827 (N.D. Iowa 2009) ........ 10
*Ascente Bus. Consulting, LLC v. DR myCommerce*,
9 F.4th 839 (8th Cir. 2021) ........ 35
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 24
*ASI, Inc. v. Aquawood, LLC*,
2020 WL 5913578 (D. Minn. Oct. 6, 2020) ........ 10
*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013) ........ 16, 17
*Beck v. Prupis*,
529 U.S. 494 (2000) ........ 31
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 20, 35
*Binkley v. Am. Equity Mortg., Inc.*,
447 S.W.3d 194 (Mo. 2014) ........ 44
*BMO Harris Bank, N.A. v. McM, Inc.*,
2017 WL 3443238 (D. Minn. Aug. 8, 2017) ........ 18
*Boles v. U.S. Dep't of Veterans Affairs*,
2015 WL 4425797 (W.D. Mo. July 20, 2015) ........ 35
*Briscoe v. LaHue*,
460 U.S. 325 (1983) ........ 33
*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*,
582 U.S. 255 (2017) ........ 18
*Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*,
42 F.4th 948 (8th Cir. 2022) ........ 14, 16

*Brown v. Kerkhoff*,
504 F. Supp. 2d 464 (S.D. Iowa 2007) .................... 10, 19
*Burnham v. Superior Ct. of Cal., Cnty. of Marin*,
495 U.S. 604 (1990) .................... 18
*Camper v. Select Portfolio Servicing, Inc.*,
2020 WL 1434021 (N.D. Tex. Mar. 23, 2020) .................... 43
*Caricato v. Nissan N. Am., Inc.*,
2021 WL 5044867 (W.D. Mo. June 1, 2021) .................... 22
*Christopherson v. Bushner*,
33 F.4th 495 (8th Cir. 2022) .................... 45
*Comprehensive Care Corp. v. RehabCare Corp.*,
98 F.3d 1063 (8th Cir. 1996) .................... 43
*Copeland v. WRBM, LLC*,
679 S.W.3d 30 (Mo. Ct. App. 2023) .................... 11, 12, 13, 14
*Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*,
528 F.3d 1001 (8th Cir. 2008) .................... 28, 31, 34
*Creative Walking, Inc. v. Am. States Ins. Co.*,
25 S.W.3d 682 (Mo. Ct. App. 2000) .................... 44
*Crest Constr. II, Inc. v. Doe*,
660 F.3d 346 (8th Cir. 2011) .................... 28, 33
*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) .................... 11
*Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*,
702 F.3d 472 (8th Cir. 2012) .................... 11, 14
*Dairy Farmers of Am., Inc. v. Travelers Ins. Co.*,
292 F.3d 567 (8th Cir. 2002) .................... 37
*Day v. Johns Hopkins Health Sys. Corp.*,
907 F.3d 766 (4th Cir. 2018) .................... 33
*Dayton Constr., Inc. v. Meinhardt*,
882 S.W.2d 206 (Mo. Ct. App. 1994) .................... 37
*Dody v. Brown*,
659 F. Supp. 541 (W.D. Mo. 1987) .................... 18, 21
*Dondero v. Jernigan*,
No. 24-10287, 2025 WL 1122466 (5th Cir. Apr. 16, 2025) .................... 8
*Driver v. All. Oncology, LLC*,
2015 WL 4254392 (W.D. Mo. July 14, 2015) .................... 38, 39
*Euphoric, LLC v. Westport Cmty. Improvement Dist.*,
2026 WL 1587314 (W.D. Mo. June 3, 2026) .................... 35
*Everest Indem. Ins. Co. v. Ro*,
200 F. Supp. 3d 825 (D. Minn. 2016) .................... 20
*Fastpath, Inc. v. Arbela Techs. Corp.*,
760 F.3d 816 (8th Cir. 2014) .................... 9
*Fehrman v. Pfetzing*,
917 S.W.2d 600 (Mo. Ct. App. 1996) .................... 36
*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004) .................... 34

*Flooring Sys., Inc. v. Beaulieu Grp., LLC*,
187 F. Supp. 3d 1091 (E.D. Mo. 2016) .......... 12, 14
*Fogie v. THORN Ams., Inc.*,
190 F.3d 889 (8th Cir. 1999) .......... 29
*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 14
*Fotoohighiam v. Sarmasti*,
2024 WL 3313363 (W.D. Mo. Apr. 29, 2024) .......... 38
*Freitas v. Wells Fargo Home Mortg., Inc.*,
703 F.3d 436 (8th Cir. 2013) .......... 24, 35, 36
*Gatz v. Ponsoldt*,
271 F. Supp. 2d 1143 (D. Neb. 2003) .......... 18, 21
*Gen. Motors Acceptance Corp. v. Windsor Grp., Inc.*,
2 S.W.3d 836 (Mo. Ct. App. 1999) .......... 39
*Gibson v. City of Portland*,
165 F.4th 1265 (9th Cir. 2026) .......... 35
*Gillis v. Principia Corp.*,
832 F.3d 865 (8th Cir. 2016) .......... 41
*Glass v. Mancuso*,
444 S.W.2d 467 (Mo. 1969) .......... 43
*Gomez v. Wells Fargo Bank, N.A.*,
676 F.3d 655 (8th Cir. 2012) .......... 25
*Grubbs v. Treasurer of Mo. as Custodian of Second Inj. Fund*,
298 S.W.3d 907 (Mo. Ct. App. 2009) .......... 40
*Hall v. Trivest Partners, L.P.*,
178 F.4th 986 (6th Cir. 2026) .......... 19
*Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*,
757 F. Supp. 2d 904 (W.D. Mo. 2010) .......... 10, 19
*Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*,
187 F.3d 941 (8th Cir. 1999) .......... 27
*Handeen v. Lemaire*,
112 F.3d 1339 (8th Cir. 1997) .......... 30
*Hardt v. Vitae Foundation, Inc.*,
302 S.W.3d 133 (Mo. Ct. App. 2009) .......... 41
*HCB Fin. Corp. v. McPherson*,
8 F.4th 335 (5th Cir. 2021) .......... 26
*Hemann v. Murlas Commodities, Inc.*,
666 F. Supp. 1299 (N.D. Iowa 1987) .......... 18
*Hemi Grp., LLC v. City of New York*,
559 U.S. 1 (2010) .......... 26, 27, 28
*Hennessey v. Gap, Inc.*,
86 F.4th 823 (8th Cir. 2023) .......... 24, 35
*Hibbs v. Berger*,
430 S.W.3d 296 (Mo. Ct. App. 2014) .......... 38
*High Sch. Servicos Educacionais, LTDA. v. Choi*,
2023 WL 10476025 (W.D. Mo. Jan. 13, 2023) .......... 44

*Hunt v. Estate of Hunt*,
348 S.W.3d 103 (Mo. Ct. App. 2011) ........................................ 36
*In re Apple, Inc.*,
602 F.3d 909 (8th Cir. 2010) ........................................ 17, 21
*In re Crop Inputs Antitrust Litig.*,
172 F.4th 570 (8th Cir. 2026) ........................................ 34, 34, 45
*In re Crop Inputs Antitrust Litig.*,
749 F. Supp. 3d 992 (E.D. Mo. 2024) ........................................ 34
*In re Highland Cap. Mgmt., L.P.*,
No. 19-34054-sgj-11, 2024 WL 959335 (Bankr. N.D. Tex. Mar. 5, 2024) .................. 8
*Jennings v. Bonus Bldg. Care, Inc.*,
2014 WL 1806776 (W.D. Mo. May 7, 2014) ........................................ 29
*Jones v. Casey's Gen. Stores, Inc.*,
2007 WL 2479666 (N.D. Iowa Aug. 30, 2007) ........................................ 23
*Jorritsma v. Tymac Controls Corp.*,
864 F.2d 597 (8th Cir. 1988) ........................................ 45
*Kansas City Hisp. Ass'n Contractors Enter., Inc. v. City of Kansas City*,
279 S.W.3d 551 (Mo. Ct. App. 2009) ........................................ 40
*Kapitus Servicing, Inc. v. JJS Bell Labs, Inc.*,
2022 WL 2111039 (W.D. Mo. June 10, 2022) ........................................ 45
*Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*,
74 F.4th 928 (8th Cir. 2023) ........................................ 14
*Kirschner v. Dondero*,
Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. Feb. 27, 2023), ECF No. 309 .................. 8
*Knowles v. TD Ameritrade Holding Corp.*,
2 F.4th 751 (8th Cir. 2021) ........................................ 26, 45
*Koger v. Hartford Life Ins. Co.*,
28 S.W.3d 405 (Mo. Ct. App. 2000) ........................................ 43
*Lafarge N. Am., Inc. v. Discovery Grp. L.L.C.*,
574 F.3d 973 (8th Cir. 2009) ........................................ 37
*Lindenwood Female Coll. v. Zurich Am. Ins. Co.*,
61 F.4th 572 (8th Cir. 2023) ........................................ 38
*Lucero v. Curators of Univ. of Mo.*,
400 S.W.3d 1 (Mo. Ct. App. 2013) ........................................ 41, 42
*Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co.*,
931 S.W.2d 166 (Mo. Ct. App. 1996) ........................................ 44
*Majestic Milling Co., LLC v. River Valley Ag Exchange, LLC*,
733 S.W.3d 563 (Mo. Ct. App. 2026) ........................................ 42
*Matter of Highland Cap. Mgmt., L.P.*,
105 F.4th 830 (5th Cir. 2024) ........................................ 8
*Mayer v. Lindenwood Female Coll.*,
453 S.W.3d 307 (Mo. Ct. App. 2014) ........................................ 12
*McDonough v. Nat'l Home Ins.*,
108 F.3d 174 (8th Cir. 1997) ........................................ 28
*Med. Marijuana, Inc. v. Horn*,
604 U.S. 593 (2025) ........................................ 26, 27

*Melichar v. Blue Cross & Blue Shield of Kan., Inc.*,
309 F. Supp. 3d 719 (D. Neb. 2018) .......... 17
*Moilanen v. Syllantavos*,
2026 WL 2333920 (N.D. Ill. Aug. 12, 2026) .......... 34
*N.C.C. Motorsports, Inc. v. K-VA-T Food Stores, Inc.*,
975 F. Supp. 2d 993 (E.D. Mo. 2013) .......... 10
*Nettles v. UMB Bank, N.A.*,
2010 WL 11618679 (W.D. Mo. Sept. 13, 2010) .......... 25
*Newton v. Tyson Foods, Inc.*,
207 F.3d 444 (8th Cir. 2000) .......... 27
*Nicholas v. Ascension Health*,
No. 4:25-cv-00051-JAR, 2025 WL 1282642 (E.D. Mo. May 2, 2025) .......... 42
*Nitro Distrib., Inc. v. Alticor, Inc.*,
565 F.3d 417 (8th Cir. 2009) .......... 25
*Nitro Distrib., Inc. v. Dunn*,
194 S.W.3d 339 (Mo. 2006) .......... 40
*Oak Bluff Partners, Inc. v. Meyer,*
3 S.W.3d 777 (Mo. 1999) .......... 43
*OFW Corp. v. City of Columbia*,
893 S.W.2d 876 (Mo. Ct. App. 1995) .......... 40
*Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*,
484 U.S. 97 (1987) .......... 10
*Parker Stewart v. Plains Com. Bank*,
2025 WL 2712496 (D.S.D. Sept. 23, 2025) .......... 27
*Parnes v. Gateway 2000, Inc.*,
122 F.3d 539 (8th Cir. 1997) .......... 35
*Pederson v. Frost*,
951 F.3d 977 (8th Cir. 2020) .......... 9, 11
*Peters Broadcast Eng'g, Inc. v. 24 Capital, LLC*,
40 F.4th 432 (6th Cir. 2022) .......... 10
*Powell v. I-Flow Corp.*,
711 F. Supp. 2d 1012 (D. Minn. 2010) .......... 23
*Primary Care Invs., Seven, Inc. v. PHP Healthcare Corp.*,
986 F.2d 1208 (8th Cir. 1993) .......... 31, 32
*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*,
138 F.3d 65 (2d Cir. 1998) .......... 10
*Raineri Constr., LLC v. Taylor*,
2014 WL 348632 (E.D. Mo. Jan. 31, 2014) .......... 31
*Regions Bank v. J.R. Oil Co.*,
387 F.3d 721 (8th Cir. 2004) .......... 26
*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*,
322 S.W.3d 112,at (Mo. 2010) .......... 35
*Rennenger v. Aquawood, LLC*,
183 F.4th 997 (8th Cir. 2026) .......... 26
*Reves v. Ernst & Young*,
507 U.S. 170 (1993) .......... 30

*Rosemann v. Sigillito*,
956 F. Supp. 2d 1082 (E.D. Mo. 2013) .... 29
*Runs After v. United States*,
766 F.2d 347 (8th Cir. 1985) .... 43
*Saffaf v. Ally Fin., Inc.*,
2021 WL 3089039 (E.D. Mo. July 22, 2021) .... 35
*Schriener v. Quicken Loans, Inc.*,
774 F.3d 442 (8th Cir. 2014) .... 44
*Secure Energy, Inc. v. Coal Synthetics, LLC*,
2010 WL 1691327 (E.D. Mo. Apr. 27, 2010) .... 29
*Sedima S.P.R.L. v. Imrex Co., Inc.*,
473 U.S. 479 (1985) .... 29
*Seeck v. Geico Gen. Ins. Co.*,
212 S.W.3d 129 (Mo. 2007) .... 40
*Shaffer v. Heitner*,
433 U.S. 186 (1977) .... 46
*Shervin v. Huntleigh Sec. Corp.*,
85 S.W.3d 737 (Mo. Ct. App. 2002) .... 38, 39
*Smith v. Goodyear Tire & Rubber Co. Inc.*,
856 F. Supp. 1347 (W.D. Mo. 1994) .... 38
*Smith v. Lawrence Ctny., Mo.*,
2022 WL 217180 (W.D. Ark. Jan. 3, 2022) .... 10
*Speaks Fam. Legacy Chapels, Inc. v. Nat'l Heritage Enters., Inc.*,
2009 WL 2391769 (W.D. Mo. Aug. 3, 2009) .... 38
*State ex rel. Norfolk S. Ry. Co. v. Dolan*,
512 S.W.3d 41 (Mo. 2017) .... 11
*State ex rel. William Ranni Assocs., Inc. v. Hartenbach*,
742 S.W.2d 134 (Mo. 1987) .... 12
*Steen v. Murray*,
770 F.3d 698 (8th Cir. 2014) .... 20
*Stephens, Inc. v. Geldermann, Inc.*,
962 F.2d 808 (8th Cir. 1992) .... 29
*Stonebridge Collection, Inc. v. Carmichael*,
791 F.3d 811 (8th Cir. 2015) .... 25, 31, 32, 33, 34
*Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*,
781 F.3d 1003, (8th Cir. 2015) .... 33
*Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*,
533 S.W.3d 720 (Mo. 2017) .... 38
*Taylor v. City of Three Rivers, Mich.*,
2021 WL 1846824 (W.D. Mo. Apr. 20, 2021) .... 16
*Taylor-McDonald v. Taylor*,
245 S.W.3d 867 (Mo. Ct. App. 2008) .... 45
*Terra Int'l, Inc. v. Miss. Chem. Corp.*,
119 F.3d 688 (8th Cir. 1997) .... 17, 22
*UMB Bank, N.A. v. Guerin*,
89 F.4th 1047 (8th Cir. 2024) .... 25, 26, 28, 30, 31, 32, 33, 34

*United States v. Henley*,
766 F.3d 893 (8th Cir. 2014) .......... 28
*United States v. Lemm*,
680 F.2d 1193 (8th Cir. 1982) .......... 29
*United States v. Turkette*,
452 U.S. 576 (1981) .......... 28
*Vallone v. CJS Sols. Grp., LLC*,
9 F.4th 861 (8th Cir. 2021) .......... 11
*Valspar Corp. v. Kronos Worldwide, Inc.*,
50 F. Supp. 3d 1152 (D. Minn. 2014) .......... 23
*Velez v. Portfolio Recovery Assocs., Inc.*,
881 F. Supp. 2d 1075 (E.D. Mo. July 265, 2012) .......... 10
*Verni v. Cleveland Chiropractic College*,
212 S.W.3d 150 (Mo. 2007) .......... 40
*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*,
646 F.3d 589 (8th Cir. 2011) .......... 11, 14, 15
*Viralam v. Comm'r*,
136 T.C. 151 (2011) .......... 26
*W. Blue Print Co., LLC v. Roberts*,
367 S.W.3d 7 (Mo. 2012) .......... 38, 43
*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 15
*Warmington v. Bd. of Regents of Univ. of Minn.*,
998 F.3d 789 (8th Cir. 2021) .......... 45
*Waters v. Glob. Payments, Inc.*,
2015 WL 13900825 (W.D. Mo. July 1, 2015) .......... 29
*Wisdom v. First Midwest Bank, of Poplar Bluff*,
167 F.3d 402 (8th Cir. 1999) .......... 31, 33
*Wisland v. Admiral Beverage Corp.*,
119 F.3d 733 (8th Cir. 1997) .......... 20
*Woodke v. Dahm*,
70 F.3d 983 (8th Cir. 1995) .......... 17, 21

**Statutes**

15 U.S.C. § 80b-6(3) .......... 30
18 U.S.C. § 1961(1) .......... 30
18 U.S.C. § 1961(5) .......... 30
18 U.S.C. § 1962(c) .......... 24, 28, 34
18 U.S.C. § 1962(d) .......... 34
18 U.S.C. § 1965 .......... 9, 10
18 U.S.C. § 1965(a) .......... 17, 18, 19
18 U.S.C. § 1965(a)–(b) .......... 16
18 U.S.C. § 1964(c) .......... 25
26 U.S.C. § 170 .......... 26
28 U.S.C. § 1391(b)(1)–(2) .......... 21
28 U.S.C. § 1404(a) .......... 17, 21, 23
28 U.S.C. § 1406(a) .......... 16, 21, 23

Mo. Rev. Stat. § 506.500 .......... 9
Mo. Rev. Stat. § 506.500(3) .......... 14

**Rules**

Fed. R. Bankr. P. 9019 .......... 6
Fed. R. Civ. P. 4(k)(1)(A) .......... 10, 11
Fed. R. Civ. P. 9(b) .......... 2, 24, 32, 33, 35
Fed. R. Civ. P. 12(b)(2) .......... 9, 46
Fed. R. Civ. P. 12(b)(3) .......... 16, 21, 23, 46
Fed. R. Civ. P. 12(b)(6) .......... 2, 23, 24, 46
Fed. R. Civ. P. 60(b) .......... 6
Fed. R. Evid. 201(b)(2) .......... 2

**Other Authorities**

5B Wright & Miller, *Fed. Prac. & Proc.* § 1352 .......... 17

## INTRODUCTION

This action is Dondero's latest attempt to litigate what is fundamentally a Texas dispute over the governance of charitable and investment entities. Dondero's 200-paragraph, 60-page Complaint is a forum-shopping endeavor that tries to transform this dispute into a sprawling civil RICO action. Dondero fails for three independent reasons, any of which warrants dismissal.

*First*, this Court lacks personal jurisdiction over Patrick, the sole "anchor Defendant" on whom Dondero's asserted basis for jurisdiction over every other Defendant depends. Patrick is domiciled in Dallas County, Texas, not Missouri, and Dondero cannot identify any cause of action against Patrick arising from any activity enumerated in Missouri's long-arm statute. Missouri appears in the Complaint only as an incidental backdrop to Patrick's family life, not as the situs of the conduct Dondero seeks to redress. Nor can this Court's exercise of jurisdiction be squared with the Due Process Clause: Patrick's sporadic, personal visits to Missouri, tied exclusively to his daughter's enrollment at the University of Missouri, bear no relationship to the conduct underlying Dondero's claims.

*Second*, venue is improper. RICO's venue provision does not reach Patrick because he does not reside, was not found, has no agent, and does not transact his affairs in this District, and Dondero has not shown, and cannot show, that haling the remaining, non-resident Defendants into Missouri is necessary to serve the interests of justice. The general federal venue statute fares no better, because the events allegedly giving rise to Dondero's claims occurred in Texas and the Cayman Islands, not Missouri. This action should be dismissed or, at a minimum, transferred to the Northern District of Texas, where virtually every party, every witness, and every item of relevant evidence is located.

*Third*, even if jurisdiction and venue were proper, all ten counts of the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim. Counts I and II fail because Dondero lacks RICO standing: Dondero alleges no concrete financial loss *of his own* and no direct relationship between the predicate acts and their claimed injury. Dondero also fails to plead a RICO enterprise distinct from the alleged pattern of racketeering and fails to plead continuity. Count III, fraud, lacks the particularity Rule 9(b) demands and fails to allege first-party reliance. Count IV, conversion, does not identify property owned or possessed by Dondero. Counts V, VI, and VII, fiduciary duty, contract, and implied covenant of good-faith, rest on conclusory assertions untethered to any enforceable right. Count VIII, civil conspiracy, fails along with the predicate claims on which it depends, and the claim is independently barred by the intracorporate conspiracy doctrine. Count IX, unjust enrichment, fails because Dondero does not allege what benefit was conferred or that *he* conferred it. And Count X seeks remedies only; it is not a cause of action.

For these reasons, and as set forth more fully below, the Complaint should be dismissed or, in the alternative, this action should be transferred to the Northern District of Texas.

## FACTUAL BACKGROUND[2]

### I. The Parties

The plaintiffs in this suit are James D. Dondero and The Dugaboy Investment Trust ("Dugaboy") (collectively, "Dondero"), a Delaware statutory trust with its principal place of business in Dallas, Texas, for which Dondero is the sole beneficiary during his lifetime. Compl. ¶¶ 25, 26. Dondero is a wealthy Texas resident and co-founder and former chief executive officer of Highland Capital Management, L.P. ("Highland"). Compl. ¶¶ 26, 55.

[2] The facts set forth in this section are drawn from the Complaint and are accepted as true solely for purposes of this motion, consistent with the standard of Federal Rule of Civil Procedure 12. Additionally, the Court may take judicial notice of the lawsuits identified in this section under Fed. R. Evid. 201(b)(2) because they constitute public court records "whose accuracy cannot reasonably be questioned."

The individual defendants are Mark E. Patrick, Paul Murphy, and Shawn Raver. Compl. ¶¶ 27, 29, 30. Patrick (sued individually and as trustee of Defendant DAAM Real Estate Trust) formerly worked for Highland-related entities before he later assumed managerial and fiduciary roles in the charitable structures—colloquially known as the DAF—at issue. Compl. ¶¶ 27. Murphy, a Cayman Islands insolvency practitioner, and Raver, who formerly worked for Highland-related entities, serve alongside Patrick in operational and administrative roles for the entities involved in the challenged transactions. Compl. ¶¶ 29, 30. The remaining defendants, including the nominal defendants, are entities that are alleged to have advised on, participated in, held assets affected by, or received proceeds from the two transactions underlying this action.

Patrick and Raver are Texas residents, while Murphy is a resident of the Cayman Islands. Compl. ¶¶ 27, 29, 30; Declaration of Mark Patrick ("Decl.") ¶¶ 2, 3, attached as Exhibit A. All the entity defendants are incorporated in Delaware, Texas, or the Cayman Islands, and all have a principal place of business or registered address in Dallas, Texas, Delaware, or the Cayman Islands. Compl. ¶¶ 31–47; Decl. ¶ 14. Defendant Hunter Mountain Investment Trust (HMIT)[3] is a Delaware statutory trust that is administered from Dallas, Texas and has a registered address in Saratoga Springs, New York. Compl. ¶ 41; Decl. ¶ 14(c).

## II. The Two Transactions Underlying this Dispute

This lawsuit is Dondero's latest attempt to gain control over charitable assets valued in excess of $270 million. Compl. ¶ 63. Dondero's claims stem from two transactions, which he contends support a civil RICO action and a hodgepodge of associated common law claims: (1) the Charitable DAF[4] restructuring, and (2) the HMIT Transaction.

[3] The parties pronounce this initialism "Him-it."
[4] Despite the acronym, the DAF is not a "donor advised fund" under IRS regulations.

**The Charitable DAF Restructure:** This fight is over control of a tax-advantaged charitable structure—the Charitable DAF (or simply, DAF). Compl. ¶¶ 4, 58. In 2011, Dondero seeded the DAF to claim a significant federal tax deduction. Compl. ¶¶ 4, 58. Prior to the DAF Restructure, the DAF assets were held by nominal defendant Charitable DAF Fund, L.P. ("the Fund"), through Defendant CLO HoldCo, Ltd., its wholly-owned subsidiary. Compl. ¶¶ 59, 60. To achieve its charitable purpose, the Fund's limited partner, Charitable DAF HoldCo, Ltd., issued "Participation Shares" to four "Supporting Organizations"—Highland Dallas Foundation, Inc., Highland Kansas City Foundation, Inc., Highland Santa Barbara Foundation, Inc., and HCMLP Charitable Fund. Compl. ¶¶ 4, 59, 65. If a distribution was made to a Supporting Organization, that Organization would, in turn, contribute to charities causes it supported. Compl. ¶¶ 4, 59, 65.

In order to receive favorable tax treatment for his donation to the DAF, Dondero was required by law to surrender ownership and control over the donated assets. Instead, Dondero exerted direct control over the DAF for years. Indeed, as alleged in his own Complaint, Dondero, among other things: handpicked the original control person he wanted to lead the DAF, sat on the board of each Supporting Organization, had a "substantial voice" over how DAF assets were used, and identified the "best uses" for the charitable funds. *See, e.g.*, Compl. ¶¶ 61, 64, 76. So Dondero got the best of all worlds: huge tax write-offs and the use of the DAF's assets for his projects.

But in March 2021, Dondero's loyal control person seemingly "had enough," so Patrick became the control person, and shortly thereafter was joined by the DAF's outside independent director, Murphy. *See* Compl. ¶¶ 29, 76, 77, 86. Patrick and Murphy restructured the DAF, upon the advice of domestic and foreign outside tax, legal, and valuation professionals (including Defendants Shields Legal Group P.C. and ValueScope, Inc. n/k/a Marshall & Stevens Dallas-Fort Worth), by (1) forming a new Delaware intermediary, Defendant CDMCFAD, LLC, (2)

substituting a new Cayman general partner, Defendant CDH GP, Ltd., and (3) creating and admitting a new charity, Defendant DFW Charitable Foundation, to act as the new majority holder of the Participation Shares in Charitable DAF HoldCo, Ltd. (and subsequently the sole member of CDMCFAD, LLC). Compl. ¶¶ 81, 86, 89, 92, 95, 107. The Supporting Organizations' Participation Shares were then redeemed for their appraised value of a little over $1.6 million in an effort to protect the charitable structure and broaden the charitable scope of the DAF. Compl. ¶¶ 92, 107. Dondero's real grievance, and basis for this lawsuit, is that he lost control over, and use of, assets he was supposed to have relinquished control over years ago. *See* Compl. ¶ 136.

**The HMIT Transaction:** This transaction is likewise an ordinary business dispute over a single asset. *See* Compl. ¶ 115. Defendant HMIT is a separate structure built in December 2015 to hold Highland Capital equity. Compl. ¶¶ 66, 67. HMIT benefited a different set of charities than the DAF. Compl. ¶¶ 68, 75. HMIT is owned by Beacon Mountain, LLC, and its sole asset was 99.5% of the limited-partnership interests in Highland. Compl. ¶¶ 41, 67. In February 2025, Patrick sold Beacon Mountain to an entity in the DAF structure, CLO Holdco, LLC, for $1 million, which reflected discounts due to liabilities arising from the still-ongoing bankruptcy and other litigation between HMIT, Dondero, and Dugaboy. *See* Compl. ¶¶ 115, 116.

## III. Dondero Litigated and Continues to Litigate this Same Dispute in Various Other Forums.

This is not the first lawsuit Dondero has filed involving allegations regarding the Charitable DAF Restructure and/or the HMIT Transaction against substantially the same parties. Rather, this is just his latest attempt in an ongoing, multi-front litigation. Dondero, either directly or through entities and trusts he funds or controls, has filed litigation over these same core disputes at issue here in the following forums:

<table>
<tr><th>Case</th><th>Relevant Summary</th></tr>
<tr><td>“Highland Bankruptcy”<br><br>In re Highland Capital Management, L.P., No. 19-34054-sgj11 (Bankr. N.D. Tex.)<br><br>Filed: October 16, 2019<br>Forum: Northern District of Texas Bankruptcy Court, with appeals to the district courts and the Fifth Circuit</td><td>Highland filed for bankruptcy protection in 2019 in the District of Delaware Bankruptcy Court, and the case was transferred to the Northern District of Texas Bankruptcy Court. The Highland Bankruptcy has spawned numerous disputes and adversary proceedings, including a current dispute about the HMIT Transaction, summarized below:<br><br>HMIT (under Patrick’s leadership) reached a Rule 9019 settlement of claims against it during the bankruptcy. Highland Bankruptcy ECF No. 4513. The Bankruptcy Court approved the settlement in June 2025. Id.<br><br>Dugaboy filed a Rule 60(b) motion to vacate the bankruptcy court’s approval order—arguing the HMIT Transaction was fraudulent based on the same theories as argued in the Complaint here. Compare id. with Compl. ¶¶ 116–121, 133(k). The Rule 60(b) motion was denied on June 15, 2026, after an evidentiary hearing, as was Dugaboy’s Motion to Reconsider that denial. Highland Bankruptcy ECF Nos. 4678, 4684, 4689. Appeals related to the 9019 settlement are currently pending.</td></tr>
<tr><td>“Cayman Liquidation”<br><br>FSD 99 and 116 of 2025<br><br>FSD 201 of 2025<br><br>CICA Civil Appeal No. 3 of 2026<br><br>Case No. 25-11376 (BLS)<br><br>First Action Filed: April 10, 2025<br>Forums: Grand Court of the Cayman Islands and District of Delaware Bankruptcy Court</td><td>Two cases and an appeal in the Cayman Islands, plus a related Ch. 15 proceeding in District of Delaware Bankruptcy Court:<br><br>(1) Liquidation of Charitable DAF HoldCo, Ltd. (FSD 99 and 116 of 2025). This proceeding led to the appointment of Joint Official Liquidators (the “JOLs”) for DAF HoldCo.<br><br>(2) the JOLs’ claims against Patrick, Murphy, CDMCFAD, DFW Charitable Foundation, CDH GP, Ltd., and CLO Holdco, Ltd. (FSD 201 of 2025), pressing the same allegations regarding the DAF Restructure. Importantly, Justice Parker refused to grant the JOLs’ injunction after a contested hearing, finding, in part, no prima facie case that:<ul><li>Charitable DAF HoldCo, Ltd. has a proprietary claim to the DAF’s assets either legally or beneficially (Feb. 10, 2026 Judgment at ¶130–147, 152); and</li><li>The Missouri properties are traceable to anything belonging to Charitable DAF HoldCo, Ltd. (Feb. 10, 2026 Judgment at ¶ 214).</li></ul>(3) the JOLs’ appeal of that injunction ruling to the Cayman Islands Court of Appeal (CICA Civil Appeal No. 3 of 2026), which is pending.</td></tr>
</table>

| Case | Relevant Summary |
|---|---|
| "HMIT State Court Case"<br><br>*Dondero v. Patrick*, Cause No. DC-25-13891, 162nd Judicial District Court, Dallas County, Texas<br><br>**Filed:** October 6, 2025<br>**Forum:** 162nd Judicial District Court, Dallas, Texas | Dugaboy and Dondero sued Patrick and Raver for alleged breach of fiduciary duty, fraud, and conspiracy relating to the HMIT Transaction and the DAF Restructure, based on the same facts underlying this litigation. *Compare* First Am. Pet. *with* Compl. |
| "Highland Foundations Case"<br><br>*The Highland Dallas Foundation, Inc., et al. v. Patrick, et al.*, Cause No. 25-BC01B-0027<br><br>**Filed:** July 1, 2025<br>**Forum:** Texas Business Court, 1st Div. (Dallas) | The Dondero-affiliated Supporting Organizations that formerly held the Participation Shares in DAF HoldCo brought suit against Patrick, DFW Charitable Foundation, CDMCFAD, LLC, Charitable DAF GP, LLC, and CDH GP, Ltd., again challenging the DAF Restructure on the same grounds as stated in the Complaint. *Compare* Pet. *with* Compl.<br><br>The court abated the case for failure to join a necessary party––the JOLs for DAF HoldCo—in September 2025, and denied reconsideration in October 2025. The Fifteenth Court of Appeals denied the Foundations' mandamus in February 2026. |
| "HMIT Arbitration"<br><br>*The Dugaboy Investment Trust v. Hunter Mountain Investment Trust, et al.*, AAA Case No. 01-25-0001-5229<br><br>**Filed:** March 24, 2025<br>**Forum:** Dallas, Texas | Dugaboy brought claims against HMIT, Rand PE Fund 1, L.P., and Patrick, including claims for fraud, breach of fiduciary duty, and civil conspiracy, based again on the DAF Restructure and the HMIT Transaction. Dugaboy withdrew its claims against Patrick in February 2026 and moved them to Dallas County. Dugaboy's remaining claims were recently tried at a final hearing in October 2026. |
| "Crown Global"<br><br>*Crown Global Life Insurance Ltd. v. Patrick*, Index No. 654453/2026<br><br>**Filed:** July 29, 2026<br>**Forum:** Supreme Court of New York, N.Y. County, N.Y. | Dondero-aligned parties (Crown Global Life Insurance Ltd., Dolomiti, LLC, and Hakusan, LLC) filed suit against Patrick, Rand Advisors, LLC, Rand PE Fund Management, LLC, Atlas IDF GP, LLC, and CLO HoldCo, LLC, with Rand PE Fund I, L.P. and Atlas IDF, L.P. as nominal defendants, complaining again about the HMIT Transaction. Plaintiffs' request for a TRO was denied. Defendants have not yet answered. |

Filing this suit now, and here, can only be described as vexatious and litigious. Which is Dondero's brand—Dondero and the entities he controls have an extensive, documented history of litigation misconduct:

- **Civil contempt.** The bankruptcy court held Dondero in civil contempt for violating a temporary restraining order. *In re Highland Capital Mgmt., L.P.*, No. 19-34054-sgj-11, Adv. No. 20-03190-SGJ (Bankr. N.D. Tex.). The Fifth Circuit affirmed the bankruptcy court's finding of contempt and further acknowledged Dondero's use of complicated entity structures to mask his misdeeds, noting that Highland encompasses up to 2,000 related entities over which Dondero exercises "de facto" control. *Matter of Highland Cap. Mgmt., L.P.*, 105 F.4th 830, 834 (5th Cir. 2024).

- **Inherent-power sanction.** The bankruptcy court sanctioned Dondero-controlled NexPoint Real Estate Partners for litigating a baseless proof of claim in bad faith, which was affirmed on appeal. *In re Highland Capital Mgmt., L.P.*, No. 19-34054-sgj-11, 2024 WL 959335 (Bankr. N.D. Tex. Mar. 5, 2024); *aff'd Matter of Highland Capital Mgmt., L.P.*, 2026 WL 2730275, at *4-5.

- **Vexatious conduct.** The bankruptcy court has characterized Dondero's conduct as "transparently vexatious" and litigious. On appeal, the Fifth Circuit said "there is ample evidence in the record to support these comments"—filing 50 proofs of claim (later withdrawn) and dozens of motions; dozens of objections; and dozens of appeals. Dondero filed a writ of certiorari to the Supreme Court challenging the Fifth Circuit's opinion, and when that was denied, he filed a petition for rehearing, which was also denied. *Dondero v. Jernigan*, No. 24-10287, 2025 WL 1122466, at *5 (5th Cir. Apr. 16, 2025), *cert. denied*, 146 S. Ct. 1516, 223 L. Ed. 2d 508 (2026), *reh'g denied*, 146 S. Ct. 1791, 224 L. Ed. 2d 182 (2026).

- **Multi-year recusal campaign against Judge Jernigan.** Dondero filed five recusal motions in the bankruptcy court. Those that were ruled on were denied. Dondero appealed three, including multiple mandamus petitions and appeals to the Fifth Circuit (which affirmed the denials) and the United States Supreme Court (which was also denied initially and on rehearing). Highland Bankruptcy ECF Nos. 2060, 3406, 3541, 3570, 3673, 4372, and *Kirschner v. Dondero*, Adv. Pro. No. 21-03076-sgj (Bankr. N.D. Tex. Feb. 27, 2023), ECF No. 309, Appx. X.; *Dondero v. Jernigan*, No. 24-10287, 2025 WL 1122466, at *5 (5th Cir. Apr. 16, 2025), *cert. denied*, 146 S. Ct. 1516, 223 L. Ed. 2d 508 (2026), *reh'g denied*, 146 S. Ct. 1791, 224 L. Ed. 2d 182 (2026).

This history only further supports dismissing this case.

## ARGUMENT

### I. Dondero's Complaint Should Be Dismissed for Lack of Personal Jurisdiction.

Under Federal Rule of Civil Procedure 12(b)(2), a defendant can move to dismiss a case for lack of personal jurisdiction. "[T]he plaintiff bears the burden to show that jurisdiction exists" and "must make a prima facie showing of personal jurisdiction over the challenging defendant" to survive a 12(b)(2) motion. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). "A prima facie showing is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022) (citation modified). Courts "may look beyond the pleadings to determine whether personal jurisdiction exists, including reviewing affidavits and other exhibits." *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).

Here, because subject matter jurisdiction rests on Dondero's RICO claim, whether Dondero's suit belongs in this District turns on whether Patrick—Dondero's lone "anchor Defendant" under the RICO statute—has the requisite forum contacts. Compl. ¶¶ 48–51. Given the structure of RICO's "Venue and process" provision, 18 U.S.C. § 1965, Dondero must show that personal jurisdiction over Patrick is authorized by Missouri's long-arm statute, Mo. Rev. Stat. § 506.500, and permitted by the Due Process Clause. Dondero cannot. Missouri's long-arm statute does not authorize jurisdiction because Dondero identifies no claim arising from an enumerated activity in Missouri. Nor does the Due Process Clause permit jurisdiction because this suit does not arise from Patrick's sparse family contacts in Missouri.

#### A. Under RICO, this Court may exercise personal jurisdiction over Patrick only if a Missouri court would be able to.

Before a court may exercise personal jurisdiction over a defendant, the plaintiff must show that (a) the defendant is amenable to service of process via a statute or rule authorizing it and (b)

the exercise of personal jurisdiction comports with the Due Process Clause of the Fifth Amendment. *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 102–04 (1987); *see also Velez v. Portfolio Recovery Assocs., Inc.*, 881 F. Supp. 2d 1075, 1081 (E.D. Mo. July 25, 2012); *Smith v. Lawrence Cty., Mo.*, 2022 WL 217180, at *8 (W.D. Ark. Jan. 3, 2022). Under the service of process requirement, "a federal district court cannot exercise personal jurisdiction over a defendant unless the [federal] statute at issue explicitly grants such jurisdiction or a state court in the forum state would have jurisdiction over that defendant." *N.C.C. Motorsports, Inc. v. K-VA-T Food Stores, Inc.*, 975 F. Supp. 2d 993, 997 (E.D. Mo. 2013); *see also* Fed. R. Civ. P. 4(k)(1)(A).

Here, Dondero invokes jurisdiction under RICO, 18 U.S.C. §§ 1961–1968, and anchors jurisdiction under that statute in Patrick. Compl. ¶¶ 48, 50–51. RICO does not authorize personal jurisdiction over Patrick, so Dondero must establish that a Missouri court could exercise jurisdiction over him. *N.C.C. Motorsports*, 975 F. Supp. 2d at 997.

The majority of Circuits hold that RICO "does *not* provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found." *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71 (2d Cir. 1998) (emphasis added); *see also Peters Broadcast Eng'g, Inc. v. 24 Capital, LLC*, 40 F.4th 432, 438–39 & n.3 (6th Cir. 2022) (collecting cases) (adopting *PT United*'s reading of Section 1965 and noting it reflects the "majority approach" adopted by Circuit Courts of Appeals).[5] Rather, "a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *Peters Broadcast*, 40 F.4th at 439; *see also*

[5] The Eighth Circuit has not weighed in on the operation of 18 U.S.C. § 1965, but district courts in this Circuit (and District) agree with the majority view that "*if* a court has personal jurisdiction over one or more RICO defendants, the court may exert jurisdiction over other parties if required to promote the ends of justice." *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 913–14 (W.D. Mo. 2010) (emphasis added); *see also Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 493 (S.D. Iowa 2007); *Armstrong v. Am. Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 850 (N.D. Iowa 2009); *ASI, Inc. v. Aquawood, LLC*, 2020 WL 5913578, at *7 (D. Minn. Oct. 6, 2020).

*Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861, 865 (8th Cir. 2021) (when a federal statute "does not provide for nationwide service of process, . . . we first look to the forum State's long-arm statute").

Here, Dondero alleges minimum contacts with Missouri exist for only one Defendant, Patrick. Under Rule 4(k)(1)(A), service is permitted on one "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . ." *Id*. So whether this Court has jurisdiction over Patrick depends on whether a Missouri state court would and, if so, whether that exercise of jurisdiction is consistent with the Due Process Clause. *See Pederson*, 951 F.3d at 979–80 ("[T]o ensure that personal jurisdiction exists, a federal district court must satisfy itself that hearing the case is consistent with both the law of the forum state and due process.").

**B. Patrick is not subject to the general or specific jurisdiction of Missouri courts.**

A court in Missouri may exercise general jurisdiction over natural persons who are domiciled in the state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014); *State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 46 n.3 (Mo. 2017). But Dondero does not allege that Patrick is domiciled in Missouri. Nor could he—Patrick is domiciled in Dallas, Texas. Decl. ¶¶ 2, 3. Accordingly, general jurisdiction is absent.

The next question, then, is whether specific jurisdiction would be proper under an enumerated category of Missouri's long-arm statute. *See Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012) ("While the long-arm statute extends jurisdiction to the limits of the Due Process Clause, it does so only for acts within its enumerated categories."). A plaintiff must demonstrate that "the suit arose from . . . activit[y] enumerated in the long-arm statute . . . ." *Copeland v. WRBM, LLC*, 679 S.W.3d 30, 37 (Mo. Ct. App. 2023); *see also Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011) ("In Missouri, specific personal jurisdiction is authorized only to the extent that the cause of action arose out of an activity covered by Missouri's long-arm statute." (citation modified)). A

party relying on a defendant's transaction of business within Missouri must come forward with non-conclusory factual allegations "showing that the plaintiff's claims arose from the defendant's transaction of business in Missouri." *Copeland*, 679 S.W.3d at 39. Thus, even when a plaintiff claims that a defendant transacted business in Missouri "regularly and systematically" or "extensively," dismissal is proper if the plaintiff does not show how its "claims arose from any of those transactions . . . ." *Id.* And "[a] party relying on a defendant's commission of a tort within this state to invoke long arm jurisdiction must make a prima facie showing of the validity of his claim." *Flooring Sys., Inc. v. Beaulieu Grp., LLC*, 187 F. Supp. 3d 1091, 1096 (E.D. Mo. 2016) (citing *State ex rel. William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d 134, 139 (Mo. 1987)). Pointing to non-actionable or speculatively linked activities that occurred in Missouri does not suffice. *Copeland*, 679 S.W.3d at 40–41.

Patrick is domiciled in Dallas County, Texas, where he has lived for decades, maintains his primary residence, conducts his day-to-day professional and management work, is registered to vote, and is licensed to drive. Decl. ¶¶ 2–4, 6. The Ashland, Missouri property referenced in the Complaint is titled in the name of the DAAM Real Estate Trust and is not personally owned by Patrick.[6] *Id.* at ¶ 8. It is the primary residence of Patrick's daughter, who is attending a six-year program at the University of Missouri. *Id.* at ¶ 9. During the period Dondero alleges the predicate acts underlying his RICO claim occurred—November 2023 through July 2025 (a period of over 600 days) (Compl. ¶ 135)—Patrick spent approximately 30 days in Missouri and spent *all* of them in commercial hotels, *not* the Ashland, Missouri property.[7] Decl. ¶ 11. Every visit was tied strictly to personal, family, and educational matters concerning his daughter's admission, orientation, and

[6] The DAAM Real Estate Trust is not a proper party to this action and should be dismissed. The DAAM Real Estate Trust is a private family trust that cannot be sued under Missouri law. *Mayer v. Lindenwood Female Coll.*, 453 S.W.3d 307, 314 (Mo. Ct. App. 2014) ("[A] trust is not a legal entity and lacks the capacity to sue or be sued.").
[7] The DAAM did not even acquire the Ashland property until November 2024. (Doc.1-1, 1-2); Decl. ¶ 8.

move-in at the University of Missouri. *Id.* at ¶ 10. Patrick conducted no corporate business in Missouri; and any incidental calls or emails involved out-of-state parties and matters centered in Texas or the Cayman Islands, not Missouri. *Id*. at ¶ 12, 13.

Under these circumstances, Dondero cannot establish jurisdiction under Missouri's long-arm statute. Dondero does little more than parrot the statute's language, generally alleging that Patrick "purposefully directed and conduct[ed] tortious, fraudulent, and illegal conduct from his ranch headquarters in Missouri," "directed tortious and fraudulent conduct at Missouri and at a Missouri charitable organization," and "acquired and held Missouri real property through DAAM Real Estate Trust." Compl. ¶ 50. Dondero provides no factual support for these allegations and, critically, never identifies a cause of action that "arose from" Patrick's purported Missouri conduct. And despite Dondero's repeated conclusory allegations that Patrick "conducts the business of" a foreign Defendant "from his ranch in Ashland, Missouri." Compl. ¶¶ 28, 33–37, 41, 43–47. Dondero fails to identify any specific business act or explain how such act connects to Dondero's claims. These allegations are not enough. *See Copeland*, 679 S.W.3d at 39 (allegations of business transacted "regularly and systematically" in Missouri do not satisfy long-arm statute absent showing how claims arose from that business).

Indeed, the *only* paragraph in Dondero's 200-paragraph, 60-page Complaint that attempts to tie a specific act to Patrick's presence in Missouri is Paragraph 111—pled on information and belief—which alleges in a conclusory fashion that he directed a March 27, 2025 redemption transaction, "including from his ranch in Ashland, Missouri." Compl. ¶ 111. Of the 14 overt acts Dondero catalogs in Paragraph 133 of the Complaint, not one contains facts showing Patrick was in Missouri when he acted, and six of the acts occurred before the Ashland Property was purchased on November 4, 2024. Compl. ¶ 133(a)–(o); (Doc. 1-1); Decl. ¶ 8. Dondero's failure to connect

the dots between Patrick's activities in Missouri and the claimed tort is precisely the type of pleading failure that Missouri courts find fatal to long-arm jurisdiction. *Copeland*, 679 S.W.3d at 40–41; *Flooring Sys.*, 187 F. Supp. 3d at 1096.[8]

**C. Exercising personal jurisdiction over Patrick does not comport with the Due Process Clause because Patrick lacks minimum contacts with Missouri.**

Even if this suit arose from an activity enumerated in the long-arm statute, Dondero must still show that jurisdiction over Patrick comports with the Due Process Clause. *Dairy Farmers*, 702 F.3d at 475–76. Because Patrick is not domiciled in Missouri, Dondero's claims "'must arise out of or relate to [Patrick's] contacts' with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021); *see also Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*, 74 F.4th 928, 930 (8th Cir. 2023).

To guide its analysis, the Eighth Circuit uses five factors, the first three being of "primary importance" and the last two "carry[ing] less weight": "(1) the nature and quality of defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Zazzle*, 42 F.4th at 952 (citation modified). None of these factors supports personal jurisdiction over Patrick here.

Looking first to the nature and quality of Patrick's Missouri contacts, they are sporadic, personal, and incidental—not purposeful or business-related. As described above, during the twenty-month period of the alleged predicate acts, Patrick spent approximately 30 days in Missouri across six trips relating to his daughter's enrollment at the University of Missouri, and each time

[8] Count X, entitled "In Rem Claim, Constructive Trust, Equitable Lien, Tracing," directed toward the Ashland property, does not change this analysis. Count X seeks various remedies, not a cause of action, which is addressed more fully below in Section H. Missouri's long-arm statute requires *a cause of action* arising from activity covered by the statute. *Copeland*, 679 S.W.3d at 37; *Viasystems*, 646 F.3d at 593; Mo. Rev. Stat. § 506.500(3).

Patrick stayed in a commercial hotel, not the Ashland property. Decl. ¶ 11. His sole connection to Missouri real property is a residence acquired in November 2024, titled to a family trust for which he is a trustee, which serves as his daughter's home. Compl. ¶¶ 28, 133(g); Decl. ¶ 8.

Dondero's allegations that Patrick "conducts the business of" nearly a dozen foreign entities and "directs" a nationwide enterprise "from his ranch in Ashland, Missouri," Compl. ¶¶ 28, 33–37, 41, 43–47, 129, are conclusory, identify no specific act performed at the Ashland property, and cannot be squared with the fact that the Ashland property is not Patrick's residence. Decl. ¶ 2, 3. The only two allegations that purport to link an event to the Ashland property assert that "Defendants" collectively transmitted a fraudulent valuation "including from" that address, and Patrick directed a redemption transaction "including from" that address. Compl. ¶¶ 109, 111. Both allegations are conjectural, pled solely on information and belief, and neither places Patrick in Missouri when the events occurred. Taken together, Dondero has not shown "a deliberate and substantial connection with the state such that [Patrick] could reasonably anticipate being haled into court [here]." *Viasystems*, 646 F.3d at 594 (quotations omitted); *see Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Turning second to the quantity of Patrick's contacts with Missouri, they are negligible. Even generously construing Dondero's non-conclusory allegations and considering Patrick's evidence, at most three events relate to Missouri, and one—a wire transmission of a purportedly fraudulent valuation—is attributed only to "Defendants" collectively, not to Patrick. Compl. ¶¶ 28, 109, 111, 133(g). Patrick made six personal trips to Missouri between November 2023 and July 2025; none were business-related, and any work he performed, such as answering a call or email, was incidental. Decl. ¶¶ 10–12. Patrick's Missouri contacts are few and, as explained below, unrelated to the conduct underlying Dondero's claims.

Most critically, third, as explained in the context of the Missouri long-arm statute analysis, Dondero's Complaint does nothing to show that this lawsuit is the product of suit-related conduct by Patrick that creates a substantial connection with Missouri. Every claim arises from the formation, control, and alleged manipulation of foreign entities and transactions among them—not from anything Patrick did in Missouri. Compl. ¶¶ 133(a)–(o).

Under these circumstances, exercising personal jurisdiction over Patrick would violate the Due Process Clause, particularly because Dondero and all remaining Defendants are foreign to Missouri and should not bear the burden of litigating here. *See Zazzle*, 42 F.4th at 952.

## II. Dondero's Complaint Should Be Dismissed for Improper Venue, or Alternatively, This Action Should Be Transferred to the Northern District of Texas.

Dondero premises venue on the "Venue and process" provision of RICO, specifically 18 U.S.C. §§ 1965(a)-(b), which requires finding venue proper as to Patrick and that the interests of justice *require* haling the remaining Defendants into this District. Compl. ¶¶ 54. Neither statutory requirement is met here. Dondero further premises venue on 28 U.S.C. § 1391(b)(2), which requires that a "substantial part" of the events or omissions giving rise to Dondero's claims occurred in this District. That requirement is also not met. Dismissal is therefore warranted, or in the alternative, this case should be transferred to a proper venue.

Courts are authorized by 28 U.S.C. § 1406(a) and Rule 12(b)(3) to dismiss an action when venue is wrong or improper. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). "The moving party has the burden of establishing that venue is improper." *Taylor v. City of Three Rivers, Mich.*, 2021 WL 1846824, at *2 (W.D. Mo. Apr. 20, 2021) (quotation omitted). "In considering a Fed. R. Civ. P. 12(b)(3) motion to dismiss for improper venue, the court is permitted to consider evidence outside the pleadings." *Melichar v. Blue Cross & Blue Shield of Kan., Inc.*, 309 F. Supp. 3d 719, 721 n.1 (D. Neb. 2018) (collecting cases); 5B Wright & Miller, *Fed.*

*Prac. & Proc.* § 1352 & n.23 (4th ed.) ("A district court may examine facts outside the complaint to determine whether its venue is proper." (collecting cases)).

Even if venue is proper, courts have authority under 28 U.S.C. § 1404(a) to transfer a case to another district where venue is also proper and more convenient. *See Atl. Marine Const. ,* 571 U.S. at 59 (2013); *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (Congress "was primarily concerned with the problems arising where, despite the propriety of the plaintiff's venue selection, the chosen forum was an inconvenient one."). While the statutory language reveals three categories of factors to consider on a motion to transfer—(1) convenience of the parties, (2) convenience of the witnesses, and (3) interests of justice—courts are not confined to these enumerated factors. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). "Instead, courts have recognized that such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id*. The party seeking transfer under § 1404(a) typically bears the burden of showing it is warranted, given the general deference to the plaintiff's choice of forum. *Apple*, 602 F.3d at 913. "This 'general' practice of according deference, however, is based on an assumption that the plaintiff's choice will be a convenient one." *Id.* "One of the central purposes of statutory venue is to ensure that a defendant is not 'haled into a remote district having no real relationship to the dispute.'" *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995).

**A. Venue does not lie under RICO's venue provision, 18 U.S.C. § 1965(a).**

Section 1965(a) permits a civil RICO action to be brought "in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). Patrick does not "reside" in this District. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 582 U.S. 255, 262 (2017); *BMO Harris Bank, N.A. v. McM, Inc.*, 2017 WL 3443238, at *2 (D. Minn. Aug. 8, 2017). Nor is Patrick "found," i.e., physically

present, in this District. *See Burnham v. Superior Ct. of Cal., Cty. of Marin*, 495 U.S. 604, 610–19 (1990). And Dondero does not allege that Patrick has an agent here. That leaves only the question of whether Patrick "transacts his affairs" in this District, which requires a finding that he "*regularly* conducts business of a *substantial* and *continuous character*" in the District. *Dody v. Brown*, 659 F. Supp. 541, 545 (W.D. Mo. 1987).

Patrick's contacts with this District fall well short of the standard required to have proper venue. Patrick's physical presence in Missouri over more than three years has consisted of a handful of short trips, most only a few days, the longest approximately four weeks, overwhelmingly tied to his daughter's enrollment and move-in at the University of Missouri, not to conducting the business of any Defendant entities. This does not amount to the "regular, substantial and continuous" business activity that § 1965(a) requires. *Dody*, 659 F. Supp. at 544–45 (defendants' phone calls exchanged with the plaintiff in the district and one sample machine shipped there did not "rise to the level of regular, substantial and continuous activity within the district" under § 1965(a)); *Hemann v. Murlas Commodities, Inc.*, 666 F. Supp. 1299, 1301 & n.1 (N.D. Iowa 1987) (venue improper under § 1965(a) where defendant's only contacts with the forum were advertising and phone calls responding to the plaintiff's inquiries); *Gatz v. Ponsoldt*, 271 F. Supp. 2d 1143, 1156–57, 1163 (D. Neb. 2003) (venue improper under § 1965(a) where none of the alleged fraudulent transactions took place in the forum and the company's principal place of business was located elsewhere at the time, notwithstanding the forum's history as the company's administrative office and individual defendants' isolated visits and calls there). Because Patrick does not reside, is not found, has no agent, and does not transact his affairs in this District, there is no RICO venue.

Even if this District was a proper venue under § 1965(a), Dondero cannot satisfy § 1965(b) as to the remaining, non-resident Defendants. Section 1965(b) permits nationwide service on out-of-

state defendants only when "necessary"—not merely when it would advance or support the ends of justice. *Hall v. Trivest Partners, L.P.*, 178 F.4th 986, 991 (6th Cir. 2026). As the Sixth Circuit explained, "interests of convenience cannot 'require,' for purposes of § 1965(b), that a defendant be haled into a district in which it lacks minimum contacts." *Id.* at 992. Courts in this Circuit likewise require a particularized showing of necessity and have declined to find the "ends of justice" satisfied by allegations that a plaintiff merely suffered harm in the forum or that service would advance the litigation. *See Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 493–97 (S.D. Iowa 2007); *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 914 (W.D. Mo. 2010). Dondero makes no such particularized showing here—he does not explain why Missouri, rather than Texas, is necessary to adjudicate his claims, nor does he allege that there is no adequate alternative forum. That omission is fatal to haling the non-resident Defendants into this District under § 1965(b).

**B. Venue does not lie under the general venue statute, 28 U.S.C. § 1391(b)(2), either.**

Venue is also improper in this District under the general venue statute, which requires that venue lie in a district "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Even when construing the facts in the light most favorable to Dondero, very few events, if any, alleged to have given rise to Dondero's claims arose in Missouri.

Dondero alleges Patrick "used the Ashland property as the headquarters for the corrupt conduct, directing the RICO and illegal enterprise and scheme from that location," Compl. ¶ 196, and that Patrick "conducts the business of" various corporate entities from his "ranch headquarters in Missouri." Compl. ¶¶ 33–40, 50. But the events actually described in the Complaint—the DAF restructuring, the disputed $1.6 million valuation of the Participation Shares, the formation of the challenged corporate entities, and the alleged misrepresentations to the charities—occurred in Texas and the Cayman Islands, not Missouri. *See, e.g.*, Compl. ¶¶ 17–20 (Shields Legal Group,

headquartered in Dallas, prepared the work plan); *id.* ¶ 19 (ValueScope, headquartered in Southlake, Texas, supplied the disputed valuation); *id.* ¶¶ 18, 42–47 (challenged entities formed in Delaware and the Cayman Islands). Directing or overseeing an activity from a district does not satisfy § 1391(b)(2) unless the underlying wrongful conduct itself occurred there. *See Everest Indem. Ins. Co. v. Ro,* 200 F. Supp. 3d 825, 835–36 (D. Minn. 2016) (venue improper where defendant merely worked for and regularly communicated with a company headquartered in the forum, because the actual wrongful conduct occurred elsewhere); *Apollo Prods., Inc. v. Marino*, 2006 WL 1798250, at *3 (W.D. Mo. June 28, 2006) (venue improper where "Plaintiffs have failed to establish that any 'events or omissions' of Defendant actually occurred within the Western District of Missouri").

Nor can Dondero rely on the effects felt by Missouri-based third parties to establish venue. Dondero alleges Defendants' conduct was directed at the Greater Kansas City Foundation. Compl. ¶¶ 53–54. The focus of the § 1391(b)(2) test is not the defendant's contacts with a particular district, but rather the location of those events or omissions giving rise to the claim. *See Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014). The Eighth Circuit has squarely rejected the premise that venue can rest on where a plaintiff, or, by the same logic, a third party, experienced the downstream consequences of a defendant's conduct, as opposed to where the defendant's wrongful conduct occurred. *See Wisland v. Admiral Beverage Corp.*, 119 F.3d 733, 736 (8th Cir. 1997). The same logic forecloses reliance on the Greater Kansas City Foundation: the Foundation's presence in Missouri reflects, at most, where the effects of the alleged scheme were felt by a third party, not where Defendants' wrongful conduct occurred, and accordingly cannot supply the "substantial part of the events or omissions" that § 1391(b)(2) requires. *See Woodke*, 70 F.3d at 985–86.

Because neither the RICO venue statute nor the general venue statute support venue in this District, this Court should dismiss the action under Rule 12(b)(3) and § 1406(a). *See, e.g., Apollo Prods*., 2006 WL 1798250, at *3; *Gatz*, 271 F. Supp. 2d at 1152; *Dody*, 659 F. Supp. at 545.

**C. In the alternative, this action should be transferred under 28 U.S.C. § 1404(a).**

Even if the Court were to find venue technically proper, transfer is appropriate under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This action could have been brought in the Northern District of Texas, Dallas Division: Patrick, Dondero, Raver, The Dugaboy Investment Trust, Marshall & Stevens, Inc.'s relevant office, and Shields Legal Group are all located or headquartered there, and a substantial part of the events giving rise to Dondero's claims occurred there. *See* 28 U.S.C. § 1391(b)(1)–(2). Indeed, Dondero has already sued many of these parties in Texas.[9]

**1. The convenience of the parties and witnesses and access to evidence favor transfer.**

Nearly every party is centered in Texas or the Cayman Islands—not Missouri. Dugaboy and Dondero, along with Defendants Patrick, Raver, and Shields Legal Group, are all Texas residents or domiciliaries. Compl. ¶¶ 25–28, 30, 32. Defendant Murphy is a resident of the Cayman Islands. Compl. ¶ 29. Marshall & Stevens, Inc. maintains its relevant office in Southlake, Texas. Compl. ¶ 31. Defendants CDMCFAD, LLC; DFW Charitable Foundation; Rand Advisors, LLC; Rand PE Fund Management, LLC; and Atlas IDF GP, LLC, and Nominal Defendants Atlas IDF, L.P. and Rand PE Fund I, L.P., all list registered or principal addresses in Dallas, Texas. Compl. ¶¶

[9] *See, e.g.*, *In re Highland Capital Management, L.P.*, No. 19-34054-sgj11 (Bankr. N.D. Tex.), filed on October 16, 2019; *Dondero v. Patrick*, Cause No. DC-25-13891, 162nd Judicial District Court, Dallas County, Texas, filed on October 6, 2025; *The Highland Dallas Foundation, Inc., et al. v. Patrick, et al.*, Cause No. 25-BC01B-0027, filed on July 1, 2025.

33–39. The remaining Nominal Defendants and Defendants are organized in the Cayman Islands, Delaware, or New York. Compl. ¶¶ 40–47.

No party or witness is a Missouri resident, and no corporate entity Defendant is incorporated, organized, headquartered, or otherwise based in Missouri. As follows, no documentary evidence is likely to be found here either. Litigating this dispute in the Western District of Missouri will impose travel and litigation costs on every party and witness, whereas a Texas forum would be convenient for Dondero and most of the Defendants. *See In re Apple, Inc.*, 602 F.3d 909, 913–14 (8th Cir. 2010) (ordering transfer when litigating in an unrelated forum would force witnesses to incur costs for "airfare, meals and lodging, and losses in productivity," and "personal costs," and when the defendant's witnesses, documents, and the site of the alleged misconduct were all located in the proposed transferee district (citation modified)); *Caricato v. Nissan N.A., Inc.*, 2021 WL 5044867, at *3 (W.D. Mo. June 1, 2021) (transferring venue when all identified non-party witnesses were located in the transferee district).

**2. The interests of justice favor transfer.**

The interest-of-justice factors likewise favor transfer. Courts consider "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra Int'l*, 119 F.3d at 696.

Here, Dondero's choice of forum is entitled to minimal weight. "In general, federal courts give considerable deference to a plaintiff's choice of forum," but that deference "is based on an assumption that the plaintiff's choice of forum will be a convenient one." *In re Apple*, 602 F.3d at 913 (citation modified). Where, as here, "no relevant connection exists between [the plaintiff], [the

defendant], potential witnesses, or the dispute and" the chosen forum, the plaintiff's choice is "entitled to minimal weight in the § 1404(a) determination." *Id.*; *see also Powell v. I-Flow Corp.*, 711 F. Supp. 2d 1012, 1015–16 (D. Minn. 2010).

The remaining interest-of-justice factors favor transfer as well. Comparative litigation costs favor the Northern District of Texas because, as discussed above, no party or witness resides in Missouri, meaning litigation here would impose travel costs on every participant that a Texas forum would avoid. *See Jones v. Casey's Gen. Stores, Inc.*, 2007 WL 2479666, at *7 (N.D. Iowa Aug. 30, 2007). Judicial economy favors transfer because the Northern District of Texas is already familiar with Dondero and the issues in this case. *Valspar Corp. v. Kronos Worldwide, Inc.*, 50 F. Supp. 3d 1152, 1157 (D. Minn. 2014) (stating the "court's familiarity with the facts and issues underlying these claims supports transfer"). Each party's ability to enforce a judgment and obstacles to a fair trial do not meaningfully favor either forum. On balance, this is fundamentally a Texas controversy, and the public interest favors its resolution in the Northern District of Texas.

For these reasons, the Court should dismiss this action for improper venue under Rule 12(b)(3) and 28 U.S.C. § 1406(a) or, in the alternative, transfer this action to the Northern District of Texas, Dallas Division, under 28 U.S.C. §§ 1406(a) or 1404(a).

## III. Dondero's Complaint Should Be Dismissed for Failure to State a Claim.[10]

Dondero asserts ten counts, none of which state a plausible claim for relief, so the Court should dismiss the Complaint pursuant to Rule 12(b)(6).

[10] When a court finds venue is improper, the court has discretion to take up additional arguments raised under Rule 12(b)(6), or, in the event of transfer, the court may preserve the arguments for ruling by the transferee court. *AML IP, LLC v. Bath & Body Works Direct, Inc.*, 189 F.4th 1132, 1136–38 (Fed. Cir. 2026). "[C]ertain judicial-economy considerations actually favor the district court's approach of deciding both grounds" because it avoids piecemeal appeals. *Id.* at 1138. Determining the viability of claims also informs the court's decision between dismissal and transfer for improper venue. However, if a court believes the proper forum is better suited to consider the substantive Rule 12(b)(6) challenges, then preserving the issue for the transferee court may be more appropriate.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor does a Complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. When the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct, the Complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679.

A plaintiff must meet Rule 9(b)'s heightened pleading standard when asserting a claim for fraud. *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requires pleading "such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Hennessey v. Gap, Inc.*, 86 F.4th 823, 827 (8th Cir. 2023) (citation modified).

### A. Dondero fails to state plausible claims in Counts I (RICO) and II (conspiracy to violate RICO) because Dondero lacks RICO standing and does not allege a distinct RICO enterprise or a continuous pattern of racketeering.

Dondero's RICO claims should be dismissed. RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). As the Eighth Circuit has cautioned, "RICO does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal

activity." *Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 822 (8th Cir. 2015) (citation modified). Courts should thus reject "attempts to convert ordinary civil disputes into RICO cases" because "RICO was not intended to apply to ordinary commercial fraud." *Id.* (citation omitted); *see Nettles v. UMB Bank, N.A.*, 2010 WL 11618679, at *3 (W.D. Mo. Sept. 13, 2010) ("Civil RICO charges regularly receive heightened scrutiny at the motion to dismiss stage of litigation because civil RICO is considered an unusually potent weapon – the litigation equivalent of a thermonuclear device." (citation modified)).

A RICO violation requires pleading "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009) (quoting *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). A plaintiff must also have RICO standing, which requires that the party "sustained an injury to business or property . . . that was caused by a RICO violation." *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012) (citation modified); *see* 18 U.S.C. § 1964(c). "These requirements are not easily met," and Dondero fails to meet them here. *UMB Bank, N.A. v. Guerin*, 89 F.4th 1047, 1053 (8th Cir. 2024).

**1. Dondero does not plausibly allege standing to assert RICO claims.**

Dondero lacks statutory standing under RICO. *First*, Dondero fails to plausibly allege that he suffered a concrete financial loss. *Second*, Dondero fails to plausibly allege that the predicate offenses led directly to his injury or that he was the intended target of the scheme. Dismissal is warranted for either reason.

Dondero does not plausibly allege that he was "injured in his business or property." § 1964(c). To meet this requirement, Dondero must allege a "concrete financial loss, and not mere injury to a valuable intangible property interest." *UMB Bank*, 89 F.4th at 1053. At its core, Dondero fails to allege that he suffered a "concrete financial loss." *Id.* Dondero repeatedly alleges the "$270 million in assets [were] owned by the established charities" and "stolen" from *them*. Compl. ¶¶ 19,

23; *see, e.g.*, *id.* ¶¶ 4, 17, 62, 80, 91, 99, 102. Dondero does not allege he suffered "an actual loss of [his] *own* money."[11] *HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 344 (5th Cir. 2021) (citation modified; emphasis added). Rather, Dondero alleges only that he lost his "ability to have a say" in how the charitable funds would be used. Compl. ¶¶ 5, 102; *see also id.* ¶¶ 4, 80. These "advisory rights" (*id.* ¶¶ 136, 146) are nothing but an "intangible property interest" insufficient to establish RICO standing.[12] *UMB Bank*, 89 F.4th at 1053; *see, e.g.*, *Regions Bank v. J.R. Oil Co.*, 387 F.3d 721, 728–30 (8th Cir. 2004) (rejecting "secondary security interest or contractual right to repayment" as sufficient to satisfy RICO standing).

Further, Dondero fails to satisfy RICO's "direct-relationship requirement." *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025). To allege an injury caused "by reason of a [RICO] predicate offense," a plaintiff must allege that the "predicate offense" was the "proximate cause" of the injury. *Rennenger v. Aquawood, LLC*, 183 F.4th 997, 1002 (8th Cir. 2026) (citation modified). In the RICO context, proximate cause means "the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *see Horn*, 604 U.S. at 612. "A link that is too remote, purely contingent, or indirect is insufficient." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010).

Courts ask whether the alleged "predicate act," rather than the overall "scheme," "led directly to its injuries." *Id.* at 13–14; *see, e.g.*, *Horn*, 604 U.S. at 613 (identifying "the first link in the chain" as the defendant's "misrepresentations"). Here, Dondero alleges a dizzying plot to steal

---

[11] To the extent Dondero bases his claims or harms on the fact that he provided the charitable funds that were allegedly stolen, that argument holds no merit. To constitute a charitable gift, the donor must irrevocably relinquish dominion and control over the donated property. *Viralam v. Comm'r*, 136 T.C. 151, 162 (2011) (requiring "irrevocable transfer of legal title and of the dominion and control of the gift to the donee[.]"); *see generally* 26 U.S.C. § 170 (Internal Revenue Code governing charitable contributions).

[12] Dondero also alleges that his "property, contractual, governance, advisory, note, and claim rights" were "impaired." Compl. ¶ 137; *see also id.* ¶¶ 136, 148. These "vague and conclusory allegations," however, plausibly allege nothing. *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 757 (8th Cir. 2021).

charitable assets so complex that it required its own "work plan." Compl. ¶¶ 17, 81–82. The alleged scheme required many "steps," including directing the creation of new corporate entities, transferring interests among these and other entities, and making false statements to prevent interference. *Id.* ¶¶ 14, 83, 128; *see id.* ¶¶ 84–126, 133 (detailing predicate acts). Dondero's burden is thus to allege that *this* "fraudulent conduct . . . led directly to [his] injuries." *Hemi Grp.*, 559 U.S. at 14 (citation omitted). But that Dondero "cannot do." *Id.*

None of the alleged predicate acts "led directly" to Dondero's loss of advisory rights to the charities. *See Anza*, 547 U.S. at 461. To get from each act to the alleged end result (Dondero losing advisory rights) requires a long "chain of causation . . . too attenuated and removed from those wrongs to provide a basis for standing under RICO." *Newton v. Tyson Foods, Inc.*, 207 F.3d 444, 447 (8th Cir. 2000). At base, Dondero's "case is anything but straightforward: Multiple steps . . . separate the alleged fraud from the asserted injury." *Hemi Grp.*, 559 U.S. at 15. And "whenever the plaintiff's theory of causation requires moving well beyond the first step," as here, "it cannot meet RICO's direct relationship requirement." *Horn*, 604 U.S. at 612 (citation modified).

Dondero's alleged harm is also "purely contingent on the harm suffered" by the charities. *Anza*, 547 U.S. at 457. That's because Dondero is not the "direct victim" of the alleged scheme. *Id.* at 458. It is the charities that were allegedly "defrauded" and the charities that allegedly "lost [the assets] as a result." *Id.*; *see* Compl. ¶¶ 19, 23. Courts regularly cabin RICO standing to a scheme's intended target. *See, e.g.*, *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 954 (8th Cir. 1999) (finding that there was no proximate cause when the "alleged racketeering activity [was] directed against third-parties"); *Ark. Home-Based Servs. Ass'n, Inc. v. Pinnacle In Home Care, LLC*, 2024 WL 4360497, at *5 (W.D. Ark. Sept. 30, 2024); *Parker Stewart v. Plains Com. Bank*, 2025 WL 2712496, at *12 (D.S.D. Sept. 23, 2025). The supporting organizations and

charities are "better situated plaintiffs" with their own "incentive to sue." *Hemi Grp.*, 559 U.S. at 11–12 (identifying this as a "relevant" "consideration" for the "direct relationship" requirement); *see Anza*, 547 U.S. at 460. And the better situated plaintiffs are already litigating this dispute in the Cayman Islands and Texas and New York. *See* Factual Background Section III, *supra*. In sum, Dondero lacks statutory standing under RICO, so the Court should dismiss.

**2. Dondero fails to plausibly allege the elements of a RICO claim.**

Even if Dondero plausibly alleged RICO standing, Dondero does not plead a plausible RICO claim. "The requirements of § 1962(c) must be established as to each individual defendant." *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008). "Failure to present sufficient evidence on any one element of a RICO claim means the entire claim fails." *UMB Bank*, 89 F.4th at 1053 (citation modified).

**a. The Complaint fails to allege a RICO enterprise that is distinct from the pattern of the racketeering activity.**

To state a claim under RICO, a plaintiff must allege the existence of a RICO enterprise, which requires pleading "an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering activity." *United States v. Henley*, 766 F.3d 893, 906 (8th Cir. 2014); *see United States v. Turkette*, 452 U.S. 576, 583 (1981) ("The enterprise is not the pattern of racketeering activity; it is an entity separate and apart from the pattern of activity in which it engages." (citation modified)). To have a distinct structure, the enterprise must engage in "common activities . . . beyond the minimal association necessary to sustain the pattern of racketeering." *McDonough v. Nat'l Home Ins.*, 108 F.3d 174, 177 (8th Cir. 1997). "[T]he group as a whole must have a common link other than the racketeering activity." *Id.* This inquiry requires determining "if the enterprise would still exist were the predicate acts removed from the equation." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 354–55 (8th Cir. 2011) (citation modified). Moreover, an association-

in-fact consisting of related corporate entities, subsidiaries, and their controlling officers acting within their corporate roles cannot constitute a distinct RICO enterprise, because a corporate family cannot associate with itself. *See Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 896–98 (8th Cir. 1999).

Dondero alleges that "an association-in-fact enterprise" existed between "Patrick, Murphy, and Raver, the deceased lawyer Douglas Mancino, Shields Legal, ValueScope Inc., [and sixteen] entities acting pursuant to Patrick's positions of authority." Compl. ¶ 127. The Complaint has no well-pleaded facts alleging "this group . . . had [a] structure independent of the alleged racketeering activity," *Stephens, Inc. v. Geldermann*, *Inc.*, 962 F.2d 808, 815 (8th Cir. 1992). Rather, as pleaded, "the enterprise had no purpose other than carrying out the alleged acts of racketeering" to obtain control over the charitable assets. *Secure Energy, Inc. v. Coal Synthetics, LLC*, 2010 WL 1691327, at *3 (E.D. Mo. Apr. 27, 2010); *see* Compl. ¶¶ 84–126, 133 (describing predicate acts); *see Secure Energy*, 2010 WL 1691327, at *3 (finding that alleged enterprise failed the distinctness requirement when all "the predicate acts were performed to advance the scheme"). If the alleged predicate acts were removed, "the alleged association-in-fact evaporates." *Stephens*, 962 F.2d at 816; *cf. United States v. Lemm*, 680 F.2d 1193, 1201 (8th Cir. 1982).

In short, "[n]o reasonable inference from the Complaint establishes that the purported enterprise did anything beyond committing racketeering activity." *Jennings v. Bonus Bldg. Care, Inc.*, 2014 WL 1806776, at *7 (W.D. Mo. May 7, 2014). The Court should thus dismiss the RICO claim on this basis as so many courts have done before. *See, e.g.*, *504 Tavern LLC v. Vitti*, 2014 WL 3487488, at *5 (W.D. Mo. July 15, 2014); *Waters v. Glob. Payments, Inc.*, 2015 WL 13900825, at *5 (W.D. Mo. July 1, 2015); *Rosemann v. Sigillito*, 956 F. Supp. 2d 1082, 1095 (E.D. Mo. 2013); *Jennings*, 2014 WL 1806776, at *7; *Secure Energy*, 2010 WL 1691327, at *3.

Moreover, as to the passive entity Defendants[13] and Nominal Defendants that were merely the corporate subjects of the challenged transactions, the Complaint fails to plead that they "participate[d] in the operation or management of the enterprise itself" as required to state a RICO claim. *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)).

**b. Dondero fails to allege that Defendants engaged in a pattern of racketeering activity.**

Next, Dondero fails to allege a pattern of racketeering activity. This element "requires at least two acts of racketeering activity." *UMB Bank*, 89 F.4th at 1053 (quoting 18 U.S.C. § 1961(5)). A plaintiff must also allege that the predicate acts "amount to or pose a threat of continued criminal activity." *UMB Bank*, 89 F.4th at 1056 (citation modified).

**i. Dondero does not plausibly allege the Entity Defendants committed two predicate acts.**

Dondero fails to allege that the following entities committed any predicate act: Atlas IDF GP, LLC; Charitable DAF GP, LLC; CLO Holdco, LLC; CLO Holdco, Ltd.; DFW Charitable Foundation; Hunter Mountain Investment Trust; Atlas IDF, LP; Beacon Mountain, LLC; Charitable DAF Fund, LP; and Rand PE Fund I, LP. *See* Compl. ¶ 133.

Similarly, even if the acts attributed to CDH GP, Ltd.; Rand Advisors, LLC; and Rand PE Fund Management LLC constituted RICO predicate acts, the Complaint alleges that these entities were involved in only one apiece. *See id.* ¶ 133(j)–(k). Also, the one act alleged against Rand Advisors, LLC and Rand PE Fund Management LLC is not a predicate act—the Investment Advisors Act, 15 U.S.C. § 80b-6(3), which has no private right of action, is not an enumerated

[13] The passive entity Defendants are Atlas IDF GP, LLC; Charitable DAF GP, LLC; CDH GP, Ltd.; CDMCFAD, LLC; CLO Holdco, LLC; CLO Holdco, Ltd.; DFW Charitable Foundation; Hunter Mountain Investment Trust; Rand Advisors, LLC; Rand PE Fund Management, LLC.

predicate act under the "exhaustive list" in 18 U.S.C. § 1961(1). *Beck v. Prupis*, 529 U.S. 494, 497 n.2 (2000); *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 406 (8th Cir. 1999) (when "violations are not on the list" they do not constitute predicate acts).

Dondero's failure to allege two predicate acts by each of the Entity Defendants requires dismissal of Count I against them. *See Craig*, 528 F.3d at 1027.

**ii. Dondero does not plausibly allege that the pattern of racketeering activity had continuity.**

Dondero's RICO claim also fails against both Patrick and the Entity Defendants because the pattern of racketeering activity lacks continuity. Continuity refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *UMB Bank*, 89 F.4th at 1056 (citation modified). A plaintiff must therefore allege "multiple predicate acts occurring over a substantial period of time (closed-end continuity) or . . . that the alleged predicate acts threaten to extend into the future (open-ended continuity)." *Id.* (citation modified). Addressing each in turn, it is clear Dondero plausibly alleges neither.

Closed continuity requires "related acts continuing over a period of time lasting at least one year." *Stonebridge Collection*, 791 F.3d at 823; *see UMB Bank*, 89 F.4th at 1056. To calculate the relevant period, courts look to "the predicate acts purportedly marking the beginning and end of the alleged scheme." *Primary Care Invs., Seven, Inc. v. PHP Healthcare Corp.*, 986 F.2d 1208, 1215 (8th Cir. 1993). And in so doing, courts "focus solely on the predicate acts of racketeering each defendant is alleged to have committed." *Raineri Const., LLC v. Taylor*, 2014 WL 348632, at *6–7 (E.D. Mo. Jan. 31, 2014); *Craig*, 528 F.3d at 1027.

Starting with the Entity Defendants, aside from CDMCFAD, LLC, the Complaint alleges that the Entity Defendants committed no more than one predicate act, so the Complaint automatically fails to allege that the alleged pattern of racketeering had continuity. Compl. ¶ 133;

*see Stonebridge Collection*, 791 F.3d at 823. As for CDMCFAD, LLC, even assuming that its predicate acts are well-pleaded, Dondero alleges the first act occurred on December 18, 2024 and the last act occurred on March 27, 2025. Compl. ¶ 133(i), (m). Three months and change is far short of the "substantial period of time" required to allege continuity. *UMB Bank*, 89 F.4th at 1056; *see Stonebridge Collection*, 791 F.3d at 823.

As to Patrick, the Complaint alleges that he committed predicate acts from November 2023 through June 2025. Compl. ¶ 133(a), (o); *see Primary Care*, 986 F.2d at 1215. In truth, the relevant period for determining continuity is far shorter.

The Complaint alleges that Patrick committed predicate acts on November 9, 2023; February 5, 2024; and March 7, 2024, by furthering the scheme through interstate wires. Compl. ¶ 133(a)–(c). These allegations, however, do not count. In calculating the relevant period, "mail and wire communications are insufficient to establish the RICO continuity factor unless they contain misrepresentations themselves." *UMB Bank*, 89 F.4th at 1053 (citation modified). On November 9, 2023, Patrick is alleged to have "request[ed]" a "legal work-plan" from his attorneys. Compl. ¶ 133(a). On February 5, 2024, Patrick is alleged to have emailed his attorneys providing instructions about legal work. *Id.* ¶ 133(b). And on March 7, 2024, Patrick is alleged to have "signed a written consent" form. *Id.* ¶ 133(c). Although the Complaint alleges that these communications furthered an alleged fraudulent scheme, none of these communications "contain[ed] misrepresentations themselves." *UMB Bank*, 89 F.4th at 1053. These three acts thus cannot count towards calculating the relevant period.

The routine business acts in Paragraph 133(d) also cannot establish the beginning of the relevant period because Dondero does not allege they "contain[ed] misrepresentations themselves." *UMB Bank*, 89 F.4th at 1053. Even if misrepresentations were alleged, they lack the

required particularity under Rule 9(b). *See Crest Const.,* 660 F.3d at 353. Paragraph 133(d) alleges that three defendants (Patrick, Murphy, and Raver) transmitted or mailed six types of documents ("resolutions, director services agreements, electronic accounting records, invoices, approvals, and wire-transfer instructions") on six dates ("September 13, 2024, October 1, 2024, December 12, 2024, December 16, 2024, March 27, 2025, and May 12, 2025"). Attributing fraudulent "conduct to multiple defendants . . . in a group pleading fashion" does not satisfy Rule 9(b). *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015). Also, the alleged bankruptcy act in June 2025 fails to satisfy Rule 9(b)'s pleading requirements and cannot give rise to RICO liability under the witness litigation privilege because it concerns testifying in a judicial proceeding. *See Day v. Johns Hopkins Health Sys. Corp.*, 907 F.3d 766, 771 (4th Cir. 2018) (Wilkinson, J.); *see Briscoe v. LaHue*, 460 U.S. 325, 330–34 (1983).

After disregarding these inadequately pleaded predicate acts, the maximum relevant period runs from October 10, 2024, through April 2, 2025 (Compl. ¶ 133(e), (n))—just six months, far short of the Eighth Circuit's minimum year requirement. *Stonebridge Collection*, 791 F.3d at 823; *UMB Bank*, 89 F.4th at 1056; *see also Wisdom*, 167 F.3d at 407 ("This six-month period is too short to satisfy the closed-ended analysis of the pattern requirement."). Dondero has not demonstrated closed-end continuity.

Nor has Dondero alleged open-ended continuity—"acts which by their very nature threaten repetition." *Stonebridge Collection*, 791 F.3d at 823 (citation modified). Here, the alleged predicate acts (mail and wire fraud) "pertain[] to a specific, non-replicable event:" the alleged theft of charitable assets. *UMB Bank*, 89 F.4th at 1057. Because the alleged scheme to steal charitable assets was "completed" in March 2025, Compl. ¶ 102; *see also id.* ¶¶ 102, 114, "there is no apparent threat that the qualifying predicate acts will continue into the future," *UMB Bank*, 89

F.4th at 1057; *see, e.g.*, *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004); *Moilanen v. Syllantavos*, 2026 WL 2333920, at *7 (N.D. Ill. Aug. 12, 2026) (finding that no open-ended continuity existed when plaintiffs alleged "that the objective was accomplished" because "[a] completed scheme supports no inference of repetition"). Perhaps recognizing this failing, Dondero alleges that open-ended continuity is satisfied because "Defendants continue to hold or control assets, claims, releases, entities, information, and proceeds obtained through the scheme and continue to resist efforts to unwind or disclose their conduct." Compl. ¶ 135. But that allegation is insufficient: "Continued silent concealment of assets is not a predicate act." *First Cap. Asset Mgmt.*, 385 F.3d at 181. In short, Dondero does not come close to alleging the predicate acts "involve a distinct threat of long-term racketeering activity" or "constitute a regular way of conducting an ongoing legitimate business or a RICO enterprise." *Craig*, 528 F.3d at 1028.

At bottom, Dondero's Complaint evidences a fundamental misunderstanding of how RICO works. The Court should reject Dondero's attempt to "convert [an] ordinary civil dispute[]" into a RICO claim and should dismiss this claim. *Stonebridge Collection*, 791 F.3d at 822. And because Dondero fails to allege a RICO violation, Count II for conspiracy to violate RICO under 18 U.S.C. § 1962(d) should be dismissed too. *See UMB Bank*, 89 F.4th at 1057; *accord In re Crop Inputs Antitrust Litig.*, 749 F. Supp. 3d 992, 1018 (E.D. Mo. 2024), *aff'd*, 172 F.4th 570 (8th Cir. 2026) ("To allege a RICO conspiracy, a plaintiff must first establish a right to relief under § 1962(c)." (citation modified)) (collecting cases).

**B. Dondero fails to state a plausible claim in Count III (common-law fraud) because the allegations lack particularity and do not allege actual reliance.**

Dondero's fraud claim should be dismissed. "A plaintiff's failure to establish any one of the essential elements of fraud is fatal to recovery." *Renaissance Leasing, LLC v. Vermeer Mfg.*

*Co.*, 322 S.W.3d 112, 132 (Mo. 2010). And these elements must be pleaded with particularity under Rule 9(b). *Freitas*, 703 F.3d at 439. Dondero's fraud claim fails for two reasons.

*First*, Dondero fails to plead the "circumstances constituting fraud" with particularity. Fed. R. Civ. P. 9(b); *see Freitas*, 703 F.3d at 439. For one, "it is not sufficient to attribute alleged false statements to 'defendants' generally." *Ascente Bus. Consulting, LLC v. DR myCommerce*, 9 F.4th 839, 845 (8th Cir. 2021) (citation modified); *see, e.g.*, *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997). Yet Dondero does just that, attributing the alleged (unspecified) false statements and omissions to all seventeen non-nominal "Defendants." Compl. ¶ 156; *see In re Crop Inputs Antitrust Litig.*, 172 F.4th 570, 577 (8th Cir. 2026) ("To survive a motion to dismiss, the complaint must specify which of the defendants are responsible for which acts or omissions." (citation modified)). Nor is it sufficient to generically allege that the Defendants "made affirmative misrepresentations and material omissions concerning" various topics. Compl. ¶ 156; *see Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020) ("Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the Rule."). Rule 9(b) requires specifying "the time, place, and content of the defendant's false representations," which Dondero neglected to do here.[14] *Hennessey*, 86 F.4th at 827.

*Second*, Dondero fails to plead first-party reliance. A fraud claim requires that "the plaintiff . . . actually relied on the misrepresentation." *Boles v. U.S. Dep't of Veterans Affairs*, 2015 WL 4425797, at *2 (W.D. Mo. July 20, 2015); *see Saffaf v. Ally Fin., Inc.*, 2021 WL 3089039, at *4 (E.D. Mo. July 22, 2021) (holding that Missouri does not recognize fraud claims "based on a theory

---

[14] Although Dondero alleges some purported representations elsewhere in the Complaint, "[a]ll details evaporate when they had to link their facts to their causes of action." *Gibson v. City of Portland*, 165 F.4th 1265, 1291 (9th Cir. 2026); *see Euphoric, LLC v. Westport Cmty. Improvement Dist.*, 2026 WL 1587314, at *21 n.33 (W.D. Mo. June 3, 2026) (Ketchmark, J.) (describing the problems with a "shotgun pleading" and citing *Gibson*). Count III thus does not provide "fair notice of . . . the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation modified).

of third-party reliance"). Dondero identifies no "representation," however, that Defendants made **to Dondero**. *Freitas*, 703 F.3d at 438; *see* Compl. ¶ 160 (alleging reliance in that Dondero "had placed trust" in Patrick rather than relied on something he said). The fraud claim should thus be dismissed.

### C. Count IV (conversion) should be dismissed because Dondero does not allege ownership of any property subject to conversion and instead seeks recovery for injuries to contractual, governance, and other intangible rights.

Dondero's conversion claim rests on allegations that Defendants impaired Dondero's "note and contractual rights, governance and consent rights, advisory rights, claims and causes of action, and traceable property value." Compl. ¶ 164. That threadbare allegation fails to state a claim for conversion under Missouri law because (1) Dondero does not allege he owned, possessed, or had an immediate right to possess the property allegedly converted, as Missouri law requires, and (2) the interests identified in the Complaint are intangible legal rights rather than identifiable property capable of supporting a conversion claim.

*First*, Dondero does not allege ownership or a possessory interest in the allegedly converted property. Under Missouri law, a plaintiff must allege, among other elements, that he was "the owner of the property or entitled to possession of it" at the time of the alleged conversion. *Fehrman v. Pfetzing*, 917 S.W.2d 600, 602 (Mo. Ct. App. 1996); *see also Hunt v. Estate of Hunt*, 348 S.W.3d 103, 107 (Mo. Ct. App. 2011).

Dondero does not allege he owned, possessed, or was entitled to possess the specific assets he claims were converted. Indeed, Dondero alleges the opposite. Dondero acknowledges that the assets were held by a series of legal entities within the Charitable DAF and Hunter Mountain structures. Compl. ¶¶ 60, 71-72. Dondero's own allegations are that the assets were not owned by Dondero personally.

*Second*, even assuming Dondero possessed the interests identified in Count IV, those interests are not property capable of conversion under Missouri law. Dondero alleged rights that Defendants allegedly converted "note and contractual rights, governance and consent rights, advisory rights, claims and causes of action, and traceable property value." Compl. ¶ 164. These are legal rights and expectations, not identifiable items of personal property that may be converted.

Missouri conversion law protects possessory interests in specific, identifiable property. *See Dayton Const., Inc. v. Meinhardt*, 882 S.W.2d 206, 208 (Mo. Ct. App. 1994) (explaining that the subject of conversion must be identifiable as a "specific chattel"). Here, Dondero does not identify any specific asset allegedly taken from him. Compl. ¶¶ 164-65. Dondero's allegations describe legal interests, authority, and expectations regarding how the charitable assets would be managed or deployed arising from Dondero's relationships with various entities, not personal property capable of conversion. Compl. ¶¶ 136-37. Even if true, the loss of these intangible rights is fundamentally different from the loss of property required to state a claim for conversion. *See Dayton Construction, Inc.*, 882 S.W.2d at 208. Dondero does not allege ownership or a right to possess the allegedly converted property and does not identify property capable of being converted. Count IV should therefore be dismissed.

### D. Dondero fails to state a plausible claim against Patrick in Count V (breach of fiduciary duty) because he does not allege facts to support the existence of a fiduciary relationship.

In Missouri, a claim for breach of fiduciary duty has four elements: "(1) the existence of a fiduciary relationship between the parties; (2) a breach of that fiduciary duty; (3) causation; and (4) harm." *Lafarge N. Am., Inc. v. Discovery Grp. L.L.C.*, 574 F.3d 973, 983 (8th Cir. 2009). "A fiduciary is a person having a duty to act primarily for the benefit of another in matters connected with his undertaking." *Dairy Farmers of Am., Inc. v. Travelers Ins. Co.*, 292 F.3d 567, 572 (8th Cir. 2002) (citation modified). A fiduciary duty "may arise as a result of the special circumstances

of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former." *Driver v. All. Oncology, LLC*, 2015 WL 4254392, at *2 (W.D. Mo. July 14, 2015) (quoting *Hibbs v. Berger*, 430 S.W.3d 296, 312–13 (Mo. Ct. App. 2014)). In determining whether a fiduciary relationship exists based on special circumstances, courts look to whether "trust is reposed with respect to property or business affairs of the other." *Shervin v. Huntleigh Sec. Corp.*, 85 S.W.3d 737, 740–41 (Mo. Ct. App. 2002). "Whether a fiduciary duty exists is a question of law." *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 15 (Mo. 2012).

Dondero fails to plausibly allege that Patrick owed him a fiduciary duty. Dondero alleges that Patrick "owed fiduciary duties to [Dondero] and/or the entities through which [Dondero's] rights were held by virtue of" ten unspecified "positions:" "trustees, directors, managers, advisers, counsel, administrators, officers, attorneys, accountants, or persons exercising control over charitable and investment assets." Compl. ¶ 169. This "bare legal assertion[]" is far too conclusory to plausibly allege that Patrick owed Dondero a fiduciary duty. *Lindenwood Female Coll. v. Zurich Am. Ins. Co.*, 61 F.4th 572, 574 (8th Cir. 2023); *see, e.g.*, *Speaks Fam. Legacy Chapels, Inc. v. Nat'l Heritage Enters., Inc.*, 2009 WL 2391769, at *3 (W.D. Mo. Aug. 3, 2009) (rejecting that plaintiffs' characterization of defendants as "investment advisors" and "independent advisors" created a fiduciary relationship when "no factual allegations in the pleadings" supported it); *Smith v. Goodyear Tire & Rubber Co. Inc.*, 856 F. Supp. 1347, 1355 (W.D. Mo. 1994) ("Harrington's characterization of the relationship is not a substitute for facts establishing a fiduciary relationship."). Indeed, "the mere existence of a business relationship does not give rise to a fiduciary relationship, nor to a presumption of such a relationship." *Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*, 533 S.W.3d 720, 728 (Mo. 2017) (citation modified); *see also Fotoohighiam v. Sarmasti*, 2024 WL 3313363, at *4 (W.D. Mo. Apr. 29, 2024).

Worse still, Dondero concedes that Patrick allegedly had fiduciary authority only "over and with respect to the Charitable DAF and Hunter Mountain Investment Trust structures." Compl. ¶¶ 27, 78; *see id.* ¶¶ 65, 75 (depicting these corporate structures). Yet Dondero pleads no facts connecting Patrick's alleged role as fiduciary for the "charitable beneficiaries" to a fiduciary duty owed to Dondero —a "donor[]" who retained only "a say" in how the charitable funds were used. *Id.* ¶¶ 72, 85, 102. Indeed, Dondero does not allege that Patrick had control over any property belonging to Dondero or that Patrick "gain[ed] superiority and influence over" him. *Driver*, 2015 WL 4254392, at *2; *Shervin*, 85 S.W.3d at 740–41. This claim should therefore be dismissed.

### E. Counts VI (breach of contract) and VII (breach of the implied covenant of good faith and fair dealing) should be dismissed because Dondero has not plausibly alleged any right to enforce the Hunter Mountain Trust Agreement.

Dondero asserts that he may enforce the Hunter Mountain Investment Trust Agreement, Compl. ¶¶ 175, 180, but his allegations do not plausibly establish any such right. And because the implied covenant of good faith and fair dealing requires an enforceable contractual relationship, the failure to allege any right to enforce the Trust Agreement is equally fatal to Count VII. Counts VI and VII should therefore be dismissed.

#### 1. Dondero's allegation that he "funded" Hunter Mountain is insufficient to confer third-party beneficiary status.

Whether Dondero may pursue a breach-of-contract claim at all is a threshold question. Under Missouri law, only parties to a contract and intended third-party beneficiaries possess standing to enforce it. *Andes v. Albano*, 853 S.W.2d 936, 942 (Mo. 1993); *Gen. Motors Acceptance Corp. v. Windsor Group, Inc.*, 2 S.W.3d 836, 839 (Mo. Ct. App. 1999).

Dondero does not allege that he is a direct party to the Hunter Mountain Trust Agreement. Instead, Dondero alleges that he is "part[y] to, assignee[] of, or intended third-party beneficiar[y]" of the agreement "by merit of the fact, at least, that [he] funded Hunter Mountain Investment

Trust." Compl. ¶¶ 175, 180. That allegation is insufficient as a matter of law. Missouri begins with a presumption against third-party-beneficiary status. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 135 (Mo. 2007). A party claiming rights as a third-party beneficiary bears the burden of demonstrating that the contract was intended for its direct benefit. *Kansas City Hispanic Ass'n Contractors Enterprise, Inc. v. City of Kansas City*, 279 S.W.3d 551, 555 (Mo. Ct. App. 2009). To overcome that presumption, "the terms of the contract must clearly express intent to benefit that party or an identifiable class of which the party is a member." *Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. 2006). A mere incidental benefit is insufficient. *Id.*

The Complaint identifies no language in the Trust Agreement demonstrating that the contracting parties intended to confer enforceable rights upon Dondero. That omission is fatal. *OFW Corp. v. City of Columbia*, 893 S.W.2d 876, 879 (Mo. Ct. App. 1995); *Grubbs v. Treasurer of Missouri as Custodian of Second Injury Fund*, 298 S.W.3d 907, 912 (Mo. Ct. App. 2009). Missouri courts have repeatedly rejected efforts by nonparties to enforce contracts based solely on the fact that they received some benefit from the agreement. *See, e.g.*, *Verni v. Cleveland Chiropractic College*, 212 S.W.3d 150, 153 (Mo. 2007).

At most, Dondero alleges he expected the structure to operate in a manner consistent with his objectives. Such expectations describe, at best, an incidental benefit, and Missouri law is clear that incidental beneficiaries lack standing to enforce a contract. *Nitro Distributing*, 194 S.W.3d at 345. Counts VI and VII should therefore be dismissed.

**2. Missouri law does not permit donors to enforce charitable trust arrangements absent a recognized exception.**

Because Dondero cannot establish that he is party to the Trust Agreement or an intended third-party beneficiary, he may argue that he nevertheless can assert contract-based claims because he funded the charitable structure. Missouri law forecloses that argument. Absent a recognized

exception, the enforcement of charitable gifts and charitable trusts belongs to the Attorney General, not private donors. *Hardt v. Vitae Foundation, Inc.*, 302 S.W.3d 133, 137 (Mo. Ct. App. 2009).

Dondero alleges that Hunter Mountain was established through the transfer of substantial assets for charitable purposes and that the structure was intended to benefit charitable organizations, including The Empower Dallas Foundation, The Okada Foundation, and The Dallas Foundation. Compl. ¶¶ 67-69. Dondero's theory depends on the premise that he contributed assets to a charitable structure and now wishes to challenge the manner in which those assets have been administered. But that is precisely the type of claim *Hardt* holds a donor cannot bring.

Furthermore, while Missouri recognizes a narrow exception where a donor seeks to enforce an express condition subsequent attached to a charitable gift, *Hardt*, 302 S.W.3d at 137, Dondero does not allege any such condition here. Accordingly, the narrow exception does not apply, and Counts VI and VII should be dismissed.

**3. Count VI fails for the additional reason that Dondero does not identify the contractual obligations Patrick allegedly breached.**

Under Missouri law, a plaintiff must do more than allege that a defendant acted improperly or contrary to a contract's purposes. Rather, the plaintiff must "point to an identifiable contractual promise" the defendant failed to honor and identify "which rights or obligations" were breached. *Gillis v. Principia Corp.*, 832 F.3d 865, 872-74 (8th Cir. 2016) (quoting *Lucero v. Curators of Univ. of Mo.*, 400 S.W.3d 1, 5 (Mo. Ct. App. 2013)).

The Complaint does not satisfy that requirement. Dondero identifies only one provision of the Trust Agreement: the Trigger Event provision. Compl. ¶¶ 176-77. Dondero alleges Patrick engaged in conduct sufficient to trigger his removal as administrator. But identifying a provision that Dondero believes was triggered is not the same thing as identifying a contractual promise Patrick breached. The Complaint never explains what contractual duty required or prohibited the

challenged conduct, how Patrick violated that duty, or how the Trust Agreement itself imposed the obligations Dondero seeks to enforce. Dondero otherwise relies on generalized allegations that Patrick engaged in self-dealing, concealed conflicts, impaired trust assets, failed to obtain required consents, and acted for personal benefit. Compl. ¶ 177. Yet the Complaint never identifies the contractual provisions allegedly requiring those consents, prohibiting those transactions, or imposing those disclosure obligations. Instead, Dondero asks the Court to infer a host of contractual duties from broad allegations of wrongdoing.

Missouri law requires more. A breach-of-contract claim is not established merely by alleging that a defendant acted unfairly or improperly. *Lucero*, 400 S.W.3d at 5. Because Dondero fails to identify the contractual rights allegedly violated or the contractual obligations allegedly breached, Count VI should be dismissed. *See Nicholas v. Ascension Health*, No. 4:25-cv-00051-JAR, 2025 WL 1282642, at *8 (E.D. Mo. May 2, 2025) (granting motion to dismiss breach of contract claim under Missouri law where plaintiff "failed to allege that [defendants] have breached any specific contract provisions").

**4. Count VII (good faith and fair dealing) fails because Dondero has not plausibly alleged an enforceable contractual relationship.**

Count VII falls with Count VI. Under Missouri law, the implied covenant of good faith and fair dealing cannot create contractual rights where none otherwise exist. *See Majestic Milling Co., LLC v. River Valley Ag Exchange, LLC*, 733 S.W.3d 563, 573 (Mo. Ct. App. 2026). Rather, the covenant presupposes a valid and enforceable contractual relationship between the parties.

As discussed above, Dondero has not established a right to enforce the Trust Agreement because he is neither a party nor a third-party beneficiary and does not fall within any recognized exception allowing donors to enforce the administration of charitable assets. Because Dondero has no viable basis for enforcing the Trust Agreement, he likewise has no basis for asserting rights

under the implied covenant. *See, e.g.*, *Camper v. Select Portfolio Servicing, Inc.*, 2020 WL 1434021, at *3 (N.D. Tex. Mar. 23, 2020); *see*, *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 413 (Mo. Ct. App. 2000) ("Breach of the implied duty of good faith and fair dealing is a contract action. In order to succeed on a breach of contract, a plaintiff must show . . . *the right of the plaintiff* and obligation of the defendant under the contract.") (emphasis added).[15]

Accordingly, because Dondero has failed to plausibly allege a contractual relationship giving rise to enforceable rights under the Trust Agreement, Count VII fails as a matter of law.

**F. Count VIII (civil conspiracy) fails because the underlying claims upon which it is based fail and it is barred by the intracorporate immunity doctrine.**

"Although civil conspiracy has its own elements that must be proven, it is not a separate and distinct action." *W. Blue Print*, 367 S.W.3d at 22 (Mo. 2012). "In Missouri, if tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well." *Id.* (quoting *Oak Bluff Partners, Inc. v. Meyer,* 3 S.W.3d 777, 781 (Mo. 1999)).

Count VIII is asserted against all Defendants other than the Nominal Defendants and is expressly premised on underlying unlawful acts including "fraud, conversion, breach of fiduciary duty, unjust enrichment, RICO violations, and other tortious or unlawful conduct alleged in this Complaint." Compl. ¶ 186. Because Count VIII is entirely derivative of those predicate claims, it cannot survive independently if the underlying claims are dismissed. Count VIII must fall as well.

Independently, Count VIII is barred by the intracorporate conspiracy doctrine: a corporation, partnership, or LLC cannot conspire with its own managers, general partners, directors, officers, or affiliated entities. *Runs After v. United States*, 766 F.2d 347, 354 (8th Cir.

[15] Dondero does not identify any contractual discretion that Patrick allegedly exercised in bad faith. Instead, Dondero broadly alleges that Patrick used his positions to benefit himself and entities he controlled. Compl. ¶ 181. Those allegations sound in fiduciary-duty and fraud theories, not breach of an implied contractual covenant. The implied covenant cannot be used to impose obligations that do not appear in the parties' agreement, nor can it be invoked as a catch-all remedy for conduct Dondero believes was unfair. *See Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996) (citing *Glass v. Mancuso*, 444 S.W.2d 467, 478 (Mo. 1969)).

1985); *Creative Walking, Inc. v. Am. States Ins. Co.*, 25 S.W.3d 682, 688 (Mo. Ct. App. 2000). Nor can an entity conspire with its outside legal counsel (Shields Legal Group, P.C.) or valuation advisors (ValueScope Inc.) retained pursuant to DAF Fund ELPA §§ 1.13, 6.2(a) and CDMCFAD LLC Agreement § 9.2(c) when acting within the scope of professional representation. *See Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co.*, 931 S.W.2d 166, 176 (Mo. Ct. App. 1996) (explaining that professional services rendered by an attorney to a client "do not support a conspiracy.").

**G. Dondero fails to state a claim in Count IX (unjust enrichment) because he specifies neither that he conferred a benefit nor what benefit was conferred.**

To state an unjust enrichment claim under Missouri law, a plaintiff must allege that "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Binkley v. Am. Equity Mortg., Inc.*, 447 S.W.3d 194, 199 (Mo. 2014).

At its core, this claim fails because Dondero does not allege that *he* conferred a benefit on Defendants. Dondero alleges only that "Defendants" passively "received substantial benefits at [his] expense." Compl. ¶ 190. Yet "[a]n essential element of this tort is a benefit conferred upon the defendant by the plaintiff." *Allied Servs., LLC v. Smash My Trash, LLC*, 153 F.4th 600, 612 (8th Cir. 2025) (citation omitted); *see, e.g.*, *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 446 (8th Cir. 2014); *Binkley*, 447 S.W.3d at 199; *High Sch. Servicos Educacionais, LTDA. v. Choi*, 2023 WL 10476025, at *8 (W.D. Mo. Jan. 13, 2023) (dismissing unjust enrichment claim because plaintiff "never allege[d] that *it* conferred a benefit" on the defendants (emphasis in original)).

Dondero also fails to plausibly allege the "benefit" that Defendants received. *Binkley*, 447 S.W.3d at 199. Dondero alleges that "Defendants"—all seventeen of them—received these ten benefits: "compensation, fees, control over charitable entities and assets, majority participation rights, releases, settlement advantages, protection from liability, use of claims, use of information,

and proceeds traceable to the challenged transactions." Compl. ¶ 190. This "naked assertion[] devoid of further factual enhancement" is insufficient to state a claim.[16] *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (citation omitted). And Dondero's kitchen-sink approach is similarly problematic. "Because liability is personal, each defendant is entitled to know what he or she did that is asserted to be wrongful." *In re Crop Inputs Antitrust Litig.*, 172 F.4th at 577. The Court need not, however, "divine [Dondero's] intent" nor "conjure up unpled allegations to save" the claim. *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) (citation omitted). Count IX should be dismissed.

### H. Count X fails to state a plausible in rem claim, constructive trust, equitable lien, or tracing claim because these "claims" are not viable causes of action.

Finally, Dondero purports to bring four causes of action for "In Rem Claim, Constructive Trust, Equitable Lien, and Tracing" in one count against Patrick, individually and as trustee of the DAAM Real Estate Trust, and the Ashland Property.[17] Compl. at 57. The claims for constructive trust, equitable lien, and tracing should be dismissed because these are *remedies*—not causes of action. *See Kapitus Servicing, Inc. v. JJS Bell Labs, Inc.*, 2022 WL 2111039, at *2 (W.D. Mo. June 10, 2022) (dismissing constructive trust claim because it "is a remedy, not a standalone claim"); *Jorritsma v. Tymac Controls Corp.*, 864 F.2d 597, 599 (8th Cir. 1988) ("Under Missouri law, the doctrine of equitable lien applies only in cases in which the law fails to give relief and justice would suffer without the equitable remedy."); *Taylor-McDonald v. Taylor*, 245 S.W.3d 867, 882 (Mo. Ct. App. 2008) (explaining that "trac[ing]" "wrongfully appropriated funds" is how a court "enforce[s] a constructive trust or lien upon property in the wrongdoer's possession"); *see also*

[16] The alleged benefits are also "vague and conclusory." *Knowles*, 2 F.4th at 757. It is anyone's guess what, for example, "settlement advantages," "use of claims," or "use of information" mean. Compl. ¶ 190.
[17] Although Dondero purports to bring Count X "against . . . the Ashland Property," the Ashland Property is not a defendant. Compl. at 1, 57.

Compl. ¶¶ 167, 192 (seeking "constructive trust" and "equitable lien" as remedies for conversion and unjust enrichment). As for the in rem claim, it is unclear what cause of action Dondero is even trying to allege. "In rem" means that the court's "jurisdiction is based on the court's power over property." *Shaffer v. Heitner*, 433 U.S. 186, 199 (1977). Count X should be dismissed.

## CONCLUSION

Dondero asks this Court to preside over the attempts of a Texas hedge-fund manager to control charitable and investment structures he has no legal right to control. Disguising this as a RICO conspiracy does nothing but tax the resources of a Court from which Dondero should never have sought relief. This Court lacks personal jurisdiction over Defendants, venue is improper, and all ten counts of the Complaint fail to state a claim. Accordingly, Defendants ask the Court to dismiss the Complaint in its entirety under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), or, alternatively, to transfer this case to the Northern District of Texas and any other relief the Court deems just and proper.

Date: November 5, 2026

Respectfully submitted,

**HUSCH BLACKWELL LLP**

By: */s/ Taylor Concannon Hausmann*

Taylor Concannon Hausmann (MO Bar # 67056)
Jeffrey J. Simon (MO Bar # 35558)
Anna Dincher (MO Bar # 78488)
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone (816) 983-8319
Facsimile (816) 983-8080
taylor.hausmann@huschblackwell.com
jeff.simon@huschblackwell.com
anna.dincher@huschblacwell.com

Matthew P. Diehr (MO Bar # 61999)
8001 Forsyth Blvd., Suite 1500
St. Louis, MO 63105
Telephone (314) 480-1500
Facsimile (314) 480-1505
matthew.diehr@huschblackwell.com

Michael Klebanov (*Pro Hac Vice* forthcoming)
1801 Pennsylvania Avenue, NW Suite 1000
Washington, DC 20006-3606
Telephone (202) 378-2300
Facsimile (202) 378-2319
michael.klebanov@huschblackwell.com

**CARRINGTON COLEMAN**

By: */s/ Brian Shaw*

Brian Shaw (*Pro Hac Vice*)
Monica Gaudioso (*Pro Hac Vice*)
Joshua L. Sherman (*Pro Hac Vice*)
2200 Ross Avenue, Suite 1800
Dallas, TX 75201
Telephone (214) 855-3000
bshaw@ccsb.com
areed@ccsb.com

***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 5, 2026, the foregoing was filed electronically with the Clerk of Court by operation of the Court's electronic filing system and served upon counsel of record via electronic email.

*/s/ Taylor Concannon Hausmann*