**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| THE DUGABOY INVESTMENT TRUST and JAMES D. DONDERO,<br><br>Plaintiffs,<br>v.<br><br>MARK E. PATRICK, individually and as trustee of DAAM REAL ESTATE TRUST; et al.,<br><br>Defendants,<br><br>ATLAS IDF, L.P.; et al.,<br><br>Nominal Defendants. | Case No. 4:26-CV-00738<br>Hon. Roseann A. Ketchmark |

**PLAINTIFFS' OPPOSITION TO MOTION TO STAY**
**<u>PLAINTIFFS' MOTION FOR APPOINTMENT OF RECEIVER</u>**

Defendants, who are credibly alleged to be corrupt custodians of charitable assets, ask this Court to pause an effort to stop their ongoing consumption of those assets. Their Motion to Stay, Doc. 51, seeks to freeze all briefing, argument, and ruling on Plaintiffs' Motion for Appointment of a Receiver, Docs. 46 & 47 ("Receivership Motion"), until their Motions to Dismiss are decided—a process that, realistically, could stretch well into 2027.

It is the Defendants' consumption of charitable assets that should be frozen, not briefing on the motion to do so. The Court should deny the motion to stay briefing on and consideration of the receivership motion. *First,* a party seeking a stay bears a heavy burden to show clear hardship or inequity if the matter proceeds, and Defendants do not come close to meeting it. Their only asserted harm is the cost of litigating the Receivership Motion—an expense that courts have repeatedly held does not justify a stay. *Second,* the pendency of a Rule 12 motion to dismiss, even

on jurisdictional grounds, does not strip this Court of authority to preserve the status quo. A federal court always has jurisdiction to determine its own jurisdiction and, pending that determination, to preserve the assets that are the subject of litigation before it. That preservation is precisely what the Receivership Motion seeks to achieve. *Third,* Defendants' assertion that there is "no imminent danger" to the charitable assets is dead wrong. If past is prologue, Defendants are paying themselves and their professional firms millions of dollars every month from the misappropriated charitable assets. Delay means millions more will evaporate.

## **BACKGROUND**

The Complaint alleges a stunning and sophisticated scheme to steal hundreds of millions of dollars from charities. Between 2023 and 2025, Defendant Mark Patrick and his co-conspirators secretly stole from four established charities more than $270 million in assets and an equity stake in Plaintiff Jim Dondero's former firm, Highland Capital, into entities Patrick controlled, including a sham charity run by Patrick himself. *See, e.g.*, Doc. 1, Complaint ("Compl."), at ¶¶ 9–21. Plaintiffs—The Dugaboy Investment Trust and Mr. Dondero—are original donors of the funds into the structure Patrick came to manage and eventually plunder. *See* Compl. at ¶¶ 25–26; 56–68. To preserve the remaining charitable assets, on October 30, 2026, Plaintiffs moved under Federal Rule of Civil Procedure 66 to appoint a receiver over the entities that now hold those assets. *See* Doc. 46.

The purpose of the Receivership Motion is to prevent ongoing, real-time dissipation of the charities' money. The full extent of the dissipation is not precisely known, but it is millions of dollars on a monthly basis. Patrick and co-conspirator Paul Murphy, while purporting to act as fiduciaries of the charitable funds, instead secretly used them to pay themselves more than $18 million—an astronomical sum—over an eight-month period beginning in the third quarter of 2024, and to pay more than $12 million to professional services firms during that period to execute

and then defend their theft. Compl. at ¶ 92. Plaintiffs know these extraordinary facts only because a liquidator was able to examine the records of one of the key entities used to effectuate this massive theft. *Id.* at ¶ 126. As Plaintiffs explained in the Receivership Motion, by the time legal remedies take hold, tens of millions more will have been consumed and lost to their rightful owners forever. Doc. 46 at 10.

On November 4, 2026, Defendants—who have now filed multiple Motions to Dismiss—filed a Motion to Stay, asking the Court to stay "any proceedings, including briefing, oral argument, and ruling, on the Receivership Motion" until their Motions to Dismiss are decided. Doc. 51 at 7. In the alternative, Defendants seek to extend their own deadline to oppose the Receivership Motion from November 13 until December 4, after their Motions to Dismiss are fully briefed. *Id.* at 8.

## ARGUMENT

### I. Legal Standard

The Court has an interest in securing the just, speedy, and inexpensive determination of every action. *See* Fed. R. Civ. P. 1. The proponent of a stay bears a heavy burden, and "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255–56 (1936). As this Court has noted, a stay is "extraordinary relief." *Haworth v. New Prime, Inc.*, 448 F. Supp. 3d 1060, 1064 (W.D. Mo. 2020) (Ketchmark, J.). Determining whether a stay is proper "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255–56.

### II. Defendants Have Not Made a Clear Case of Hardship or Inequity.

The Court should deny the Defendants' motion for a stay because there has been no showing of "hardship or inequity" as is required under *Landis*. Defendants have presented no

cognizable rationale for why their Motions to Dismiss should jump ahead in line—whether through a stay of briefing on the Receivership Motion or a *de facto* stay in the form of a briefing schedule that tails briefing on their Motions to Dismiss. Indeed, Defendants present no argument that they would face prejudice at all. *See Daywitt v. State*, No. 14-CV-4526 (WMW/LIB), 2016 WL 11975092, at *6 (D. Minn. Mar. 4, 2016) (denying stay where movants "failed to even argue a hardship or inequity would arise").

Nor could the Defendants argue any meaningful prejudice. Importantly, the proposed receivership is not stripping the Defendants of control of their own assets. The corporate entities that comprise the charitable structures are supposed to be safeguarding those assets for charitable use. A receivership will ensure that is happening. *See Wiswall v. Sampson*, 55 U.S. 52, 65–66 (1852) ("The effect of the appointment is not to oust any party of his right to the possession of the property, but merely to retain it for the benefit of the party who may ultimately appear to be entitled to it."). Defendants have little equitable interest weighing against receivership. *Cf. U.S. v. Mansion H. Ctr. N. Redevelopment Co.*, 594 F.2d 653, 656 (8th Cir. 1979) (finding that property manager with no ownership interest in property could not challenge or interfere with receivership).

And having to litigate the receivership motion is not a hardship. *See, e.g.*, *Schreiner v. Babbitt*, No. 24-06149-CV-SJ-LMC, 2025 WL 1426090, at *1 (W.D. Mo. May 16, 2025). "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Smokey Alley Farm Partn. v. Monsanto Co.*, No. 4:17 CV 2031 JMB, 2018 WL 278624, at *4 (E.D. Mo. Jan. 3, 2018) (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005)); *see also Daywitt*, 2016 WL 11975092, at *6.

## III. The Court Has the Authority to Preserve the Status Quo Pending Decision on Defendants' Motions to Dismiss.

Defendants' request to stay progress on the Receivership Motion rests primarily on the false premise that the Court inevitably will agree with Defendants that it lacks personal jurisdiction over certain parties, that venue is improper, and/or that the case should be dismissed on the merits. Doc. 51 at 2. According to Defendants, the Court must first assure itself of its jurisdiction before taking *any* action in this case, so the Defendants' motions—because they raise jurisdiction challenges—must take precedence. Doc. 51 at 2–3.

But that is very much not the law. Especially where there is a credible threat to assets that are the subject matter of the litigation, a court is not required to assure itself of jurisdiction or issue a formal ruling as to all pending jurisdictional challenges prior to granting preliminary relief that preserves the status quo. *Laclede Gas Co. v. St. Charles Cnty., Mo.*, 713 F.3d 413, 416–17 (8th Cir. 2013). Indeed, federal courts are empowered to maintain the status quo while sorting out both their jurisdiction and the merits of the actions before them. A federal court "always has jurisdiction to determine its own jurisdiction," and pending that determination it "ha[s] the power to preserve existing conditions while it [is] determining its own authority to grant injunctive relief," unless the assertion of jurisdiction is frivolous. *Bloomfield v. Blanche*, No. 4:26-CV-03032, 2026 WL 2431824, at *1 (S.D. Tex. Aug. 19, 2026). Courts accordingly retain authority to "grant preliminary equitable relief to preserve the status quo" notwithstanding a pending jurisdictional challenge. *Benedict v. Amaducci,* No. 92-CIV. 5239 (KMW), 1993 WL 87937, at *1 n.1 (S.D.N.Y. Mar. 22, 1993).

The Supreme Court explained the rationale for this authority in *United States v. First Nat'l City Bank*, affirming the imposition of injunctive relief to freeze assets that were at risk of dissipation. 379 U.S. 378, 385 (1965). Even without service on the taxpayer defendant, and despite

not yet having satisfied itself that it possessed personal jurisdiction over that defendant, the Supreme Court found injunctive relief as to assets held on behalf of that defendant by a bank was reasonable to preserve the status quo in the interim. *Id.* And for good reason: without the ability to preserve the status quo, a fast-moving defendant—including one over whom personal jurisdiction was not yet established—could render a court powerless to provide an effective remedy if and when it reaches final disposition on the merits of the case.

For this reason, receivers are frequently appointed prior to resolving a motion to dismiss on jurisdictional grounds or alongside consideration of such a motion to "preserve or recover the Assets of the Receivership Entities." *Fed. Trade Comm'n v. Next-Gen, Inc.*, 2018 WL 5312204, at *1, *7 (W.D. Mo. July 17, 2018) (appointing receiver on the basis that the Court has "good cause to believe it will have jurisdiction over all parties hereto and that venue in this district is proper"); *see also Oliver and Co. v. Zamber*, No. 4:25-cv-00132-MTS, 2025 WL 1580288, at *9 (E.D. Mo. June 4, 2025) (resolving Rule 12 motion, including jurisdictional issues, and appointing receiver in same order). The requested stay, and indeed the requested extension, puts the motion to dismiss process first before a requested receivership, an option courts have repeatedly declined when asset dissipation is a risk.

Plaintiffs will respond to Defendants' Motions to Dismiss in due course. But as a preliminary matter, this Court can be assured that there is good cause to believe the Court will have jurisdiction over Plaintiffs' claims. Plaintiffs bring claims under the Racketeer Influenced and Corrupt Organizations statute, which "allows Plaintiffs to institute a RICO action against any Defendant in the district where it 'is found' or 'transacts [its] affairs.'" *Jennings v. Bonus Building Care, Inc.*, No. 4:13-CV-663-W-DGK, 2014 WL 1806776, at *2 (W.D. Mo. May 7, 2014) (quoting 18 U.S.C. § 1965(a)). Plaintiffs have pleaded facts showing Mr. Patrick is found in the Western

District of Missouri, where he maintains a home, and that he transacts his affairs from his home in the Western District to orchestrate and to support the RICO enterprise. *See, e.g.*, Compl. at ¶¶ 50–54. Indeed, when Mr. Patrick was summoned to appear for an in-person deposition in Dallas, he claimed it would be a spectacular burden because he was planted out of state, what turned out to be his house in the Western District of Missouri. And his deposition was, at his demand, remotely taken as he sat in his office in his Ashland, Missouri house. This is the same house he purchased days after scraping eight-figures from the charitable structures and into his own pocket.

Due to the nationwide service component of the statute, "if a court has personal jurisdiction over one or more RICO defendants, the court may exert jurisdiction over other parties" it may not have traditional personal jurisdiction over. *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F. Supp. 2d 904, 913–14 (W.D. Mo. 2010). To the extent Defendants contest the factual basis for Plaintiffs' allegations (which comes through affidavits hanging off Mr. Patrick's filing incorrectly framed as a motion to dismiss), that is a matter for summary judgment, not a motion to dismiss. *Gorog v. Best Buy, Co., Inc.*, 760 F.3d 787, 791 (8th Cir. 2014).

## IV. There is Imminent Danger of Dissipation of Assets.

A stay (or delay in briefing) pending disposition of Defendants' Motions to Dismiss is inappropriate given the rapid and unwarranted dissipation of assets by Mark Patrick and his coconspirators. Plaintiffs have raised colorable claims of a wide-ranging conspiracy designed to secretly steal $270 million of assets, and nearly all of the equity stake in Highland Capital, from the original charitable owners, all to line the pockets of Patrick, his colleagues, and the professional services firms they employed to carry out the scheme. There is nothing currently in place to adequately assure the Court that the assets will be preserved. The receivership would fill that void.

Defendants' proposed stay would be an obstacle to these efforts, preventing protection from further concealment or dissipation. The proposed stay would last through disposition of

multiple motions to dismiss—which, realistically, may not be resolved until well into 2027. Patrick's past acts are a reliable guide to how that time will be used by Defendants: to further diminish, by millions of dollars, assets intended for charitable purposes. Worse, without implementing protections, the enterprise ultimately could place the disputed assets outside the reach of this Court, effectively negating any remedy this Court might ultimately order.

The Defendants' assertion that a voluntary agreement in the Texas Business Court Case will prevent further squandering of charitable assets is plainly wrong. As part of pending litigation in the Texas Business Court, the Defendants entered into an agreement under Rule 11 of the Texas Rules of Civil Procedure with three of the Supporting Organizations.[1] The Defendants would have this Court believe that the Rule 11 agreement provides ironclad assurance that charitable assets cannot be further dissipated while this action plays out. Not so. The Rule 11 agreement is self-policed by the very parties accused of looting the assets in the first place. The Plaintiffs have no ability to enforce it. And it has gaping holes that Defendants can exploit (and have exploited) to continue enriching themselves at the expense of the charitable owners.

*First*, under the agreement the Defendants are forbidden to "transfer, conceal, withdraw, alienate, redeem, expend, encumber, disperse, or otherwise dispose of any and all funds," but that restrictions applies only if such actions are "outside of the ordinary course of business." Def.'s App. 69a, ¶ (7)a. There is no definition of "ordinary course of business," leaving the interpretation to the sole discretion of Patrick. And here, as outlined in Plaintiffs' Receivership Motion, the "ordinary course of business" for Defendants *is* the squandering and waste of charitable assets. *See* Doc. 46 at 9–14. The number of law and accounting firms Mr. Patrick has retained to further and defend his misconduct is but one example. Notably absent from his filings is that he is paying them

[1] Rule 11 of the Texas Rules of Civil Procedure merely permits a court to enforce an agreement between litigants if the agreement is written, signed, and filed with the court.

from his own assets, or even the assets he has already taken from the charitable structures, rather than the remaining charitable assets proposed to be put under receivership. This Rule 11 agreement provision, which relies on an undefined and open-ended qualifier, can easily be abused.

*Second*, the agreement prohibits "increas[ing] the compensation paid to any employee" of the Defendants. Def.'s App. 69a, ¶ (7)b. But even if Patrick or his co-conspirators would be considered an "employee" affected by this provision, prior to execution of the agreement the Defendants already had inflated their compensation to the tune of tens of millions per year. Doc. 46 at 9. This compensation is rapidly draining the charitable assets, so any prohibition against increasing already sky-high compensation is effectively no prohibition at all.

*Third,* the remaining restraints pertain only to winding up or restructuring of the entities. *See* Def.'s App. 69a, ¶ (7)c–d. But again, this is a prohibition with no real teeth. Mark Patrick has already restructured the entities to his preferred form to steal the charitable assets. Doc. 46 at 4–7. So, the Defendants have no real reason to further restructure themselves.

*Fourth*, unlike a receivership, the Rule 11 agreement has no enforcement mechanism that inures to the Plaintiffs or that provides for reliably disinterested monitoring. On its face, the Rule 11 agreement was supposed to be a stop-gap measure in place for approximately a month prior to a temporary injunction hearing. *See* Def.'s App. 68a, ¶ 5. But the action in which the Rule 11 agreement was issued is stayed. The Rule 11 agreement has no reporting or disclosure obligation, so any violations likely will remain undiscoverable unless encountered by chance or through other litigation. Trusting the discretion of Mr. Patrick and hoping for a chance discovery of any violation is not sufficient protection for hundreds of millions of dollars of charitable funds.

*Fifth*, the Rule 11 agreement does not provide durable protection against further dissipation of assets because it is in force only temporarily and is beyond this Court's power to preserve or

enforce. By its own terms, the agreement is in force only until the Texas Business Court rules on the Supporting Organizations' application for a temporary injunction or appointment of a receiver. Def.'s App. 69a, ¶ 7. If the Texas court denies the Supporting Organizations' application or otherwise resolves that litigation, Defendants would be unencumbered by the limitations the agreement imposes. *See In re Vaishangi, Inc.*, 442 S.W.3d 256, 259 (Tex. 2014) (holding that where, as here, a Rule 11 agreement amounts to only an interlocutory order, the court's ability to enforce it expires after judgment is rendered). Or Defendants could simply seek to settle the suit to achieve the same result, making an end run around this Court's ability to grant effectual relief to Plaintiffs.

Ultimately, this Court has no control over the Rule 11 Agreement—an agreement certain Defendants entered into with others and which could evaporate at any moment, perhaps even at the Defendants' choosing. So even if it did completely restrain Defendants from their voracious appetite for charitable assets—and it does not—the Rule 11 Agreement is insufficient to protect against dissipation of assets in *this* action.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Stay and allow the Receivership Motion to proceed on the existing schedule.

Dated: November 9, 2026

Respectfully submitted,

/s/ *Michael J. Edney*

MORGAN, LEWIS & BOCKIUS LLP
Avery Joseph Welker
Missouri Bar No. 77661
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
Tel.: (713) 890-5000
Fax: (713) 890-5001
Email: avery.welker@morganlewis.com

Michael J. Edney (*pro hac vice*)
D.C. Bar No. 492024
Torsten Kracht (*pro hac vice*)
D.C. Bar No. 501395
Mark C. Ingram (*pro hac vice*)
D.C. Bar No. 90031689
Aubrianna Mierow (*pro hac vice* forthcoming)
D.C. Bar No. 90027117
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541
Tel.: (202) 739-3000
Fax: (202) 739-3001
Email: michael.edney@morganlewis.com
Email: torsten.kracht@morganlewis.com
Email: mark.ingram@morganlewis.com
Email: aubrianna.mierow@morganlewis.com

Martha B. Stolley (*pro hac vice*)
New York Bar No. 2965374
101 Park Avenue
New York, NY 10178-0060
Tel.: (212) 309-6000
Fax: (212) 309-6001
Email: martha.stolley@morganlewis.com

L. Heidi Manschreck (*pro hac vice*)
New York Bar No. 4537585
110 North Wacker Drive
Chicago, IL 60606-1511
Tel.: (312) 324-1000
Fax.: (312) 324-1001
Email: heidi.manschreck@morganlewis.com

Karrie J. Clinkinbeard
Missouri Bar No. 51413
ARMSTRONG TEASDALE LLP
2345 Grand Boulevard, Suite 1500
Kansas City, MO 64108
Tel.: (816) 472-3175
Email: kclinkinbeard@atllp.com

*Attorneys for Plaintiffs James D. Dondero and The Dugaboy Investment Trust*

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 9, 2026, the foregoing was filed electronically with the Clerk of Court by operation of the Court's electronic filing system and served upon counsel of record via electronic email.

/s/ *Michael J. Edney*
Michael. J. Edney